VINCENT R. DALEY, JR., d/b/a Daley & Associates, Plaintiff-Appellant, *v.*
RICHARD G'SELL *et al.*, Defendants-Appellees.

First District (5th Division)   No. 80-2301

Opinion filed December 11, 1981.

John J. Corbett and Stuart C. Wallace, both of Chicago, for appellant.

Robert Handelsman and Emil Shafran, both of Robbins, Coe, Rubinstein & Shafran, Ltd., of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

This appeal arises from an action brought by plaintiff, Vincent R. Daley, Jr., d/b/a Daley & Associates (Daley), a real estate broker, against defendants, Richard G'Sell (G'Sell), Sheldon J. Weinstein (Weinstein), Robert B. Smith (Smith), Ronald A. Friedman (Friedman), James W. Kosbie (Kosbie) and 1931 North Lincoln Park West, an Illinois Limited Partnership (Park West), to recover a real estate brokerage commission. Counts II, IV and VI of Daley's six-count second amended complaint were dismissed with prejudice by the trial court. Daley appeals, contending that the dismissal of these counts was erroneous. The only questions raised for review concern whether counts II, IV and VI of the second amended complaint state a cause of action. In order to resolve these questions, it is necessary to examine the pleadings.

The second amended complaint alleges the following.

Daley employed a saleswoman named Jacqueline Klein (Klein) in his real estate brokerage business. G'Sell solicited the service of Daley, through Klein, to aid him in procuring property located at 1936 North Clark Street in Chicago (the premises). On November 17, 1977, G'Sell entered into an oral agreement with Klein, as Daley's agent, to act as brokers for G'Sell "and his designates" in the purchase of the premises. In return for the brokerage services, G'Sell agreed to pay Daley $100,000 at the closing.

During the months of November and December of 1977, Klein performed the following services for G'Sell pursuant to the oral agreement: (1) ascertained that the premises were subject to a lease; (2) determined that Weinstein was one of the lessees of the property and that the lease contained an option to purchase; (3) kept G'Sell's identity a secret until Klein authorized its disclosure to Weinstein; (4) obtained "relevant information" concerning the lease from Weinstein and conveyed the information to G'Sell; (5) conducted negotiations between G'Sell and Weinstein regarding the purchase of the lease; (6) introduced G'Sell to

Weinstein on December 2, 1977, in an effort to further negotiations between the two; and (7) obtained current rent roles, floor plans, income and expense items, architectural plans and other information regarding the lease and furnished them to G'Sell.

G'Sell, along with Smith and Friedman, formed a partnership (Park West) for the purpose of owning the legal rights in the leasehold of the premises which were to be later taken in a land trust. Weinstein and Kosbie were the beneficial owners of another land trust which held legal title, as lessee, to the leasehold interest in question. On December 24, 1977, a fire occurred at the premises. On three subsequent dates, Weinstein falsely represented to Daley that the fire and its aftermath prompted him to withdraw the premises from the market. Then, during January and February of 1978, Weinstein, Kosbie, G'Sell, Smith and Friedman conspired together, with knowledge of Daley's involvement as a broker, to conduct further negotiations for the sale of the lease, with the intent to defraud him out of the brokerage commission.

A contract dated February 27, 1978 was executed between the defendants which resulted in the purchase and sale of the leasehold interest in the premises without payment of Daley's brokerage commission. That contract was executed by Smith on behalf of himself, G'Sell and Friedman, without Daley's knowledge. Weinstein and Kosbie's trustee executed the contract on their behalf. The transaction was closed through an escrow in July of 1978.

Although Daley, through Klein, rendered his services at G'Sell's request, Smith and Friedman, individually and as agents for Park West, had knowledge of these services and ratified them by participating in the transaction and consummating the purchase of the lease.

Count I of Daley's second amended complaint is directed against G'Sell only and seeks $100,000, based upon breach of the oral brokerage agreement. Count II demands judgment of $100,000 from G'Sell, Smith, Friedman and Park West, in that they were unjustly enriched at Daley's expense when his efforts led to the purchase of the lease without payment of any brokerage commission. Count III, alleging that Weinstein induced G'Sell to breach his contract with Daley, seeks $100,000 in actual damages and $100,000 in exemplary damages against him. Count IV charges G'Sell, Smith, Friedman and Weinstein with a civil conspiracy to defraud Daley of his commission and prays for actual and punitive damages totalling $200,000. Count V, duplicating the allegations of count IV, seeks recovery from Kosbie on the theory that he was a partner of Weinstein in the operation of the leased premises when the unlawful acts occurred. Finally, count VI merely adds Park West as a defendant in the conspiracy since G'Sell, Smith and Friedman performed the fraudulent acts as agents of Park West.

Since we are with the propriety of the dismissal of counts II, IV and VI of the second amended complaint, we now turn to those counts.

OPINION

Daley contends that count II properly pleads a cause of action for restitution based on unjust enrichment or contract implied in law against the defendants. Count II alleges that Smith, Friedman and Park West, knowingly accepted the benefits from the breach of G'Sell's oral agreement with Daley, and were unjustly enriched by the sum of $100,000—the amount of savings realized by them in refusing to pay Daley's brokerage commission.

■■ A contract implied in law, or a quasi-contract is ficticious and arises by implication of law wholly apart from usual rules relating to contracts. (*Town of Montebello v. Lehr* (1974), 17 Ill. App. 3d 1017, 309 N.E.2d 231.) It is equitable in nature and is predicated on the fundamental principal that no one should unjustly enrich himself at another's expense. (*First National Bank v. Glenn* (1971), 132 Ill. App. 2d 322, 270 N.E.2d 493.) Where there is an obligation or duty and a receipt of a benefit to such duty, the law may imply from the circumstances or the relation of the parties a promise to pay. *Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 400 N.E.2d 614.

■■ In our view, the allegations of count II do not establish a duty under this theory on the part of Smith, Friedman and Park West, to pay Daley the commission allegedly promised him in the oral agreement with G'Sell. Daley and G'Sell are the only parties to the alleged oral agreement in question. It is well-established law in this jurisdiction that where work is done under a contract, the suit must be between the parties to the agreement; third parties are not liable on the basis of an implied undertaking even if they are benefited by the work. (*Compton v. Payne* (1873), 69 Ill. 354; *Walker v. Brown* (1862), 28 Ill. 378.) In *Walker*, one Shergold contracted on behalf of himself and Walker to have work done by Brown. After completion of the work, Brown sought payment from Walker. Walker denied the authority of Shergold to execute the contract on his behalf and refused to pay. The court ruled that no recovery could be had against Walker under a theory of quasi-contract, even though he was benefited by the work since he was not a party to the contract. In *Compton*, Payne brought suit against Livingston Compton to recover for work and labor upon an implied undertaking. Relying on *Walker*, the court denied recovery to Payne since the contract for the work existed between him and Reuben Compton, not with Livingston Compton, who was incidentally benefited by it. Since Smith, Friedman and Park West did not contract with Daley, we hold that they are not liable to Daley for

the work he allegedly performed under his agreement with G'Sell under the theory of quasi-contracts.

More recently, in *Panorama of Homes, Inc. v. Catholic Foreign Mission Society, Inc.* (1980), 84 Ill. App. 3d 142, 404 N.E.2d 1104, this court denied recovery under the theory of quasi-contract to a cooperating broker that sought a brokerage commission from a seller whose property it had shown. Even though the plaintiff alleged in its complaint that it had procured the purchaser and arranged the sale, the court found no equitable basis to compensate the broker. In so ruling, the court noted that plaintiff performed its services for another party (the seller's assignor), that plaintiff had no expectation of receiving payment from the seller when the services were performed, and that the seller never accepted or acknowledged that plaintiff was the broker or agent in connection with the sale of the property.

Similarly, in the present case, Daley performed his services for G'Sell, not for Smith, Friedman and Park West. Also, Daley alleges no facts showing that the defendants acknowledged that Daley was their broker, and there was, therefore, no expectation of receiving payment from them. We cannot conceive of an equitable basis to compensate Daley under these facts.

■■ Furthermore, we note that count II alleges that Smith, Friedman and Park West, "accepted and ratified" the services of Daley with the knowledge that he performed them, by purchasing the lease of the premises. We do not believe that these allegations are sufficient, however, to state a cause of action under a theory of ratification. It is true that an alleged principal may become liable to compensate the broker for his unauthorized acts by subsequent ratification of the broker's acts. (*Carlson v. Marshall* (1912), 174 Ill. App. 438.) However, it is axiomatic that ratification does not result from the affirmance of a transaction with a third person unless the one acting as agent purported to be acting for the ratifier. (Restatement (Second) of Agency §83 (1958).) Count II is devoid of any allegations that Daley acted on behalf of Smith, Friedman and Park West when he performed his alleged brokerage services. Count II only alleges that Daley acted "at the special instance and request of defendant Richard G'Sell" in rendering his work. Therefore, these three defendants could not have ratified acts that were not done on their behalf. Nor can it be argued that G'Sell acted as an agent for Smith, Friedman and Park West when he entered into the alleged oral contract with Daley. Count II simply states that G'Sell entered into the agreement with Daley to act as a broker for G'Sell "and his designates" in the purchase of the lease. The term "designates" is vague, conclusionary and does not denote an agency relationship. Moreover, there are no allegations that Park West, the limited partnership, was in existence at the time of the formation of

this contract or that G'Sell was acting on its behalf or on that of its partners, Smith and Friedman at that time. In fact, no date is alleged as to when the partnership came into existence.

■■ Count II reflects that Smith and Friedman's involvement with any wrongdoings occurred near the time of the purchase of the lease, long after the alleged oral contract was made. The trial court, in dismissing count II, noted that Smith, Friedman and Park West were "too far removed" from the oral agreement, and that they "came onto the scene" months after it was created. We agree with the trial court that there are no facts alleged which establish that either G'Sell or Daley performed any acts at the behest of these defendants that were subject to their later ratification.

Daley next contends that count IV of the second amended complaint states a cause of action in civil conspiracy against G'Sell, Smith, Friedman and Weinstein.

Count IV alleges that Weinstein, "falsely and with intent to deceive and defraud," told Klein that due to the fire, the premises were not for sale; that with the knowledge of the brokerage arrangement, defendants "conspire[d] between themselves" without Daley's knowledge, "to conduct further negotiations for the purchase and sale of the lease * * *" with the intent to defraud Daley from the brokerage commission; that Daley relied upon Weinstein's misrepresentations and ceased further efforts regarding the lease; and that defendants entered the contract for the sale of the lease, which did not provide for the brokerage commissions due Daley.

■■ A conspiracy is a combination of two or more persons to accomplish an illegal object or to accomplish a legal object by illegal means. (*Heller v. Goss* (1980), 80 Ill. App. 3d 716, 400 N.E.2d 70.) The basis of conspiracy is not the "combination," but the wrongful act alleged to have been done in pursuance of the conspiracy. (*Fox v. Cohen* (1980), 84 Ill. App. 3d 744, 406 N.E.2d 178.) In an action for conspiracy to defraud the elements of concealment, misrepresentation or wrongful inducement must be alleged. *Commercial Products Corp. v. Briegel* (1968), 101 Ill. App. 2d 156, 242 N.E.2d 317.

■■■ We believe that count IV does not state a cause of action for civil conspiracy since there are no allegations of a wrongful act performed by defendants in furtherance of the "conspiracy to defraud." The first act set forth is Weinstein's false representations that the premises were taken off the market due to a fire. But, this act is not "wrongful" since it is not alleged that the combination to defraud Daley was created prior to this conversation. By definition, it is not possible for an act to be performed to promote a conspiracy if the parties have not yet combined. The second and third acts alleged are that defendants conducted negotiations and

consummated the eventual sale of the lease. These acts likewise fail to establish fraudulent conduct, since it is not averred that G'Sell, Smith, or Friedman knew of Weinstein's alleged misrepresentations to Daley when they carried out the transaction. In sum, count IV does not allege that defendants, as co-conspirators, actively concealed any wrongful conduct from Daley, misrepresented facts to him or induced him to behave to his detriment. Hence, there is no conspiracy to defraud.

■■ Finally, we hold that count VI of the second complaint, which merely adds Park West as a defendant to the conspiracy charge, was also properly dismissed. Obviously, since count IV fails to state a cause of action against the individual defendants, there can be no conspiracy charge against the partnership as an entity. The partnership can only act through its individual agents who have not, according to count IV, committed any wrongful acts in furtherance of a conspiracy. Thus, counts II, IV and VI were properly dismissed by the trial court.

Accordingly, the judgment of the circuit court is hereby affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.