GREGORY STONE, Plaintiff-Appellant, v. PHIL BROWN *et al.*, as Trustees, Defendants-Appellees and Third–Party Plaintiffs-Appellants (John P. Pearl, Indiv. and as Trustee, Third–Party Defendant-Appellee).

Third District   Nos. 3—86—0594, 3—86—0600 cons.

Opinion filed October 29, 1987.—Rehearing denied December 8, 1987.

Kevin D. Schneider, of Westervelt, Johnson, Nicoll & Keller, of Peoria (Karen J. Steele, of counsel), for appellant.

Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria (Gregory P. Sujack and Julian E. Cannell, of counsel), for appellees Phil Brown and Robert Brown.

Timothy J. Cassidy, of Cassidy & Mueller, of Peoria, for other appellee.

JUSTICE SCOTT delivered the opinion of the court:

This action was initially brought by plaintiff-appellant (Stone) to recover a brokerage commission occasioned by the sale of property from defendants-appellees and third–party plaintiffs-appellants (Brown) to third–party defendant-appellee (Pearl). Brown filed a third-

party complaint against Pearl, based on an indemnification clause in a contract between them wherein Pearl agreed to pay any brokerage commission owed as a result of the sale. Pearl counterclaimed against Brown alleging that Brown fraudulently induced Pearl to sign the contract containing the indemnification agreement.

The trial court granted Brown's motion for a directed verdict at the close of Stone's evidence and proceeded to try Pearl's counterclaim against Brown. The jury returned a verdict in favor of Pearl and awarded Pearl $13,282.50 as compensatory damages and $50,000 as punitive damages upon which judgment was entered.

Stone filed this appeal from the judgment based on the directed verdict against him and Brown appealed the judgment in favor of Pearl on the counterclaim. Both appeals have been consolidated in this court. No questions were raised on the pleadings.

As to Stone's appeal of the directed verdict, we note that Stone claims his commission arose as the result of an oral contract between the parties or on the theory of *quantum meruit*. The theories are premised on the following facts.

In 1976, David Brown, Philip Brown and Robert Brown purchased a three-acre tract of land situated in Pioneer Industrial Park, Peoria, Illinois. Legal title to the property was taken by Robert Brown as trustee for the benefit of himself and his two brothers. In 1980 or 1981 it was determined that the Pioneer Park property was no longer needed and a sign was placed on the property advertising it for sale.

On November 10, 1983, Philip Brown sent a letter to Stone, stating:

> "We are interested in selling this [Pioneer Park] property at $2.25 a square foot. Because we have a couple of things in the fire, we cannot list this property at the moment. However, if you have any interested parties, we would be willing to pay the normal 10% commission if you found a buyer."

After receiving the letter from Brown, Stone made relevant inquiries to determine the zoning, utilities and other pertinent information regarding the property and maintained a file on the property. Stone testified that from November 10, 1983, to April of 1984 he represented the property to various other commercial enterprises for development of retail establishments.

On April 25, 1984, Stone received a telephone call from Wayne Baum, president of Diversified Buildings, Incorporated, inquiring as to the availability of commercial sites in the Peoria area for the purpose of a car dealership. Stone testified that Baum indicated that he was working with Peoria Toyota-Volvo. Stone told Baum about three

possible sites available and that of the three, the Brown property was most desirable for a car dealership. That same day, Stone contacted Brown inquiring as to whether the subject property was still for sale. Brown indicated that it was still for sale and Stone then called back Baum and told him that Brown was anxious to sell the property.

The next day (April 26, 1984), Baum called Stone and told him that $2.25 per square foot was too high and asked whether there would be any movement on the asking price. Stone then called Brown, inquiring whether Brown would accept a lower price per square foot. Brown stated to Stone that as little as $2 per square foot would be accepted if Stone had a buyer and also assured Stone that he would still receive the customary 10% commission. Stone then called back Baum, informing him that Brown would accept $2 per square foot.

Stone had also had conversations with Julian Cannell, Brown's attorney, who, at the time in question, was also Stone's attorney. Stone testified that at the end of April or early May, he met with Cannell and discussions were had concerning the Brown property. Stone stated that he informed Cannell of his conversations with Baum and the interest of Peoria Toyota-Volvo and Jack Pearl, who was the 50% shareholder in the dealership and trustee of the Pearl Enterprise Land Trust, regarding the Brown property. Cannell then informed Brown of his conversation with Stone. A week to 10 days later, Cannell called Stone advising him that Brown and Pearl were discussing the possible purchase of the Brown property by Pearl. Cannell also assured Stone that Stone would receive his 10% commission.

Stone's next contact with Brown or Pearl was by a letter, dated July 16, 1984, addressed to Brown, a copy of which was sent to Pearl. A second letter, dated August 2, 1984, was sent to Brown, with a copy to Pearl, requesting that he be informed of any pending transaction and inquiring about payment of his brokerage commission. Neither Brown nor Pearl replied to either of these letters.

Stone admits that he never had direct contact with either Pearl or David Buysse (Buysse), the manager of Peoria Toyota-Volvo. Therefore, the central question is whether Baum was an agent for Pearl or Peoria Toyota-Volvo. Baum testified that he had been friends with Buysse for several years. In early 1984, Buysse told Baum that the owners of Peoria Toyota-Volvo were seeking a new location for the dealership. Baum stated, which Buysse affirmed, that Buysse requested Baum to do a feasibility study for the construction of a dealership building on another parcel of property (Cassidy property) in Peoria. After determining the Cassidy property was unsuitable, Baum

then contacted Stone inquiring whether other sites may be suitable for a car dealership. At that time Stone told him of the Brown property and gave him other relevant information concerning the property. Baum indicated that he did this as a service to clients in hopes that his efforts would result in his company's acquiring a contract for the client. Baum then passed the information he received from Stone on to Buysse.

Buysse testified that sometime after he had received information from Baum concerning the feasibility of the Brown property he passed this information on to John Pearl. Buysse also testified that he advised Bernie Wolfe, the sales representative from Toyota Corporation, about the Brown property and went with Wolfe to view the site. Buysse stated that when he advised Pearl of the available sites, one being the Brown property, Pearl responded that he was already aware of the available property.

Phil Brown testified that his first conversation with John Pearl was on May 10, 1984. During the conversation, Brown asked Pearl if he was involved with Stone, to which Pearl replied that neither he nor any of his associates were involved with Stone to his knowledge.

Pearl testified that his discussions with Buysse concerning the feasibility of certain properties for the dealership occurred in late 1983. Pearl also admitted, however, that Buysse advised him of the availability of the Brown property in the same conversation that Buysse told him Baum had considered the Cassidy property unfeasible. Pearl insisted, though, that this conversation occurred after he had already contacted Brown, which he stated was in early April of 1984.

The subject property was eventually sold to John Pearl as trustee for the John Pearl Enterprises Land Trust for the sum of $2.09 per square foot for a total of $275,000.

At the close of plaintiff's evidence, the court granted defendant's motion for a directed verdict, stating that there was no evidence to sustain the claim. The court stated that there was not sufficient evidence to support Stone's claim that his actions were the basis of Mr. Pearl's involvement with Brown.

■ The standard rule for a directed verdict is that "verdicts ought to be directed *** only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 514.) Therefore, if there is any evidence in the record that supports plaintiff's position that he is entitled to a real estate commission, the evidence must then be pre-

sented to a jury for a determination as to the sufficiency of the evidence supporting said claim. In doing so, we must also consider whether plaintiff's evidence states a *prima facie* case in light of Illinois law.

Plaintiff is not basing his claim for commission on a written contract. Clearly no such contract existed. Instead, plaintiff claims his commission upon an oral contract or, alternatively, upon *quantum meruit.*

■ Generally, a broker is entitled to a commission if he is the procuring cause of a consummated real estate transaction which he was employed to negotiate. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069.) The broker is deemed the procuring cause if he brought the parties together. (*Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 437 N.E.2d 872.) Moreover, under Illinois law, a broker is entitled to recovery by oral contract (*Doss v. Kirk* (1956), 8 Ill. App. 2d 536, 132 N.E.2d 49), or under the theory of *quantum meruit* (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069).

Viewing the evidence in a light most favorable to plaintiff, we are of the opinion that there is evidence supporting plaintiff's claim for commission. The central question appears to be whether plaintiff had sufficient contact with Pearl or his associates to infer an agency relationship. Although it is clear that Stone had no direct dealings with either Pearl or Buysse, he did give Baum substantial relevant information concerning the Brown property. The question then becomes whether Baum was acting under authority of Pearl or one of his associates or whether the information provided by Baum was used by Pearl, thereby creating an implied contract.

■ There is testimony to the effect that the information provided by Baum was related to Pearl prior to Pearl's first contact with Brown. Hence, there is evidence supporting the proposition that Pearl used the information which was ultimately supplied by plaintiff. We are not passing any judgment as to the sufficiency of the evidence as that is for a jury to decide. Nonetheless, we do believe that plaintiff has met the burden of proving a *prima facie* case and, therefore, reverse the directed verdict granted by the trial court and remand the case for a new trial.

Plaintiff also complains that the trial court improperly denied his motion to disqualify attorney Cannell from testifying on behalf of Brown. We leave any ruling as to the qualification of attorney Cannell to testify up to the discretion of the trial judge upon remand and

make no further comment here.

As to the second appeal, we are of the opinion that a new trial is in order based upon our decision above. This second appeal stems from Pearl's counterclaim against Brown for fraud in that Brown induced Pearl to sign a contract containing an indemnification clause requiring Pearl to pay any broker's commissions owing as a result of the transaction.

Had we not reversed the first appeal, the result here may have differed. However, the fraud action appears to rest upon Pearl's lack of knowledge concerning Stone's involvement in the transaction. Therefore, if a jury believes at retrial that Stone was the procuring cause of the sale, the jury may not believe that Brown was guilty of fraud. Thus, we believe Stone's cause of action and Pearl's counterclaim are arguably related and the jury should be allowed the opportunity to make such a decision.

Since we have reversed and remanded the decision of the trial court, all errors alleged by Brown will receive no comment, as we suspect that a new trial will rectify any alleged previous errors committed by the trial court.

Lastly, two motions were made to this court. Brown, as third-party plaintiffs-appellants, moved this court to allow an amendment to their answer for the record on appeal pursuant to Supreme Court Rule 362. (107 Ill. 2d R. 362.) We believe that since we have reversed and remanded the trial court on Pearl's counterclaim against Brown for the reasons stated herein, the motion need not be considered, as Brown will have full opportunity to add the affirmative defense at a new trial. Any ruling on such motion would have no bearing on our decision. Pearl, in response to Brown's motion to amend, presented an objection to third-party plaintiffs'-appellants' petition to amend pleading in the record on appeal and motion to strike appellants' reply brief. Pearl's motion to strike appellants' (Brown's) reply brief is premised upon Brown's including argument concerning the affirmative defense of waiver. Again, we believe that this issue need not be decided as we have reversed and remanded for new trial the decision of the trial court on grounds other than waiver. Any arguments made with regard to waiver are moot at this point.

Accordingly, both appeals are reversed and remanded for new trial.

Reversed and remanded.

BARRY, P.J., and STOUDER, J., concur.