Robert C. RANQUIST, Jr., Individually
and d/b/a Robert C. Ranquist &
Co., Plaintiff,

v.

James DONAHUE and Frances
Donahue, Defendants.

No. 87 C 876.

United States District Court,
N.D. Illinois, E.D.

April 24, 1989.

Roger J. Guerin and Daniel Cummings, Rothschild, Barry and Myers, Chicago, Ill., for plaintiff.

Walter J. O'Brien, II and Angels Imbierowicz, Madonna, Christensen, Muscarello, O'Brien & Associates, Oakbrook Terrace, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Robert C. Ranquist, Jr. has sued defendants James Donahue and Frances Donahue for restitution in the form of an equitable lien for construction improvements on the defendants' property. After the defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), this court referred to the motion to Magistrate Lefkow for a report and recommendation ("R & R"). On February 1, 1989, the magistrate issued an R & R recommending that the motion be denied, and returned the case to this court. The defendants have filed objections to the R & R pursuant to Fed.R.Civ.P. 72(b). For the reasons set forth below, this court rejects the magistrate's recommendation and grants the defendants' motion.

### FACTS

The complaint alleges the following. In 1978, the City of Darien ("the City") and the Ford City Bank and Trust Company, Trust No. 1870 ("the Trust"), entered into a pre-annexation agreement ("the Agreement") pursuant to the Trust's purchase of the Westminster subdivision in Darien, Illinois. The Agreement required, in part, that certain improvements be made to the property prior to residential development of the subdivision. These improvements included storm and sanitary sewers, water mains, street lighting, road and curb construction, mass earthwork, tree and brush clearing, and off-site restoration. The improvements had to be constructed on the whole subdivision prior to or in conjunction with the City's issuance of building permits

for any of the nine lots. The Agreement was executed on October 10, 1978 and was binding on the signers and their successors for a period of ten years.

The subdivision is comprised of nine lots. Eight of the nine form a U-shape with the lots consecutively numbered from Nos. 1 to 8. Lot No. 9 forms the interior of the U-shape and is reserved as a public utility and drainage easement. Prior to 1986, the defendants purchased lot No. 7. On July 2, 1986, the plaintiff purchased the remaining eight lots.

Shortly after his purchase, the plaintiff decided to construct the required improvements on the property. He offered to purchase the defendants' lot, but they declined to sell. He then asked the defendants to contribute to the cost of the improvements, but they refused. The plaintiff proceeded to do the work. During the course of the construction, and after it was completed, the plaintiff asked the defendants to reimburse him for their fair share of the improvements, but again they refused.

Some time later, the defendants engaged a construction firm to build a house on their lot. They intend to sell their improved lot in the future. The plaintiff has sued the defendants for their proportionate share of the construction, $19,370.37.

## DISCUSSION

The parties agree that this is a case of quasi-contract (or contract implied-in-law) and that the general principles governing this case lie in § 1 of the Restatement of Restitution: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Since the plaintiff has alleged that the defendants were enriched by the improvements to the subdivision, the sole question presented here is whether that enrichment (at the plaintiff's expense) was unjust.

Although the defendants make a plethora of arguments as to why their retention of the benefits conferred on them by the plaintiff is not unjust, the case turns on the answer to a single question: Did the Agreement unqualifiedly require the lot owners to construct the improvements on the property, or did it instead require them to do so only if they elected to develop the property? Let's see why.

Because both parties were successors to the Agreement, they were both bound by its terms. Under settled principles of contribution, "a person who has discharged more than his proportionate share of a duty owed by himself and another as to which, between the two, neither had a prior duty of performance, is entitled to contribution." Restatement of Restitution § 81; *see Falcone v. Hinsdale Gynecology & Obstetrics, Ltd.*, 148 Ill.App.3d 439, 447, 102 Ill.Dec. 137, 499 N.E.2d 694 (1986). Thus, if the Agreement required that the construction be undertaken irrespective of what the owners intended to do with the property, then the plaintiff and the defendants were co-obligors to the City, and the defendants must reimburse the plaintiff for their proportionate share of the construction undertaken to satisfy this obligation.[1]

On the other hand, if the plaintiff and the defendant were required to do the construction only if they chose to develop the property, then when the plaintiff did the construction, he did so voluntarily. The case then falls within the ambit of § 112 of the Restatement: "A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution." Two recent Illinois cases have addressed the quasi-contractual obligations of a person who benefits from work voluntarily conducted by

1. The defendants err when they rely on cases holding that when a person obligated under a contract to another benefits a third person in the course of satisfying his contractual obligation, he has no right to sue the third person for the benefits she derived. *See Decatur Production Credit Association v. Murphy*, 119 Ill. App.3d 277, 288, 74 Ill.Dec. 765, 456 N.E.2d 267 (1983); *Daley v. G'Sell*, 102 Ill.App.3d 548, 551, 58 Ill.Dec. 524, 430 N.E.2d 556 (1981); Restatement of Restitution, § 106 (especially Illustration 3). As successors to the Trust, the plaintiff and the defendants were both subject to the Agreement. Thus, if the Agreement required construction of the improvements, the defendants were not third persons to the contract, but rather co-obligors with the plaintiff.

another in situations closely analogous to this case. *Knaus v. Dennler*, 170 Ill.App. 3d 746, 751, 121 Ill.Dec. 401, 525 N.E.2d 207 (1988); *Board of Directors of Carriage Way Property Owners Association v. Western National Bank of Cicero*, 139 Ill.App.3d 542, 547–48, 94 Ill.Dec. 97, 487 N.E.2d 974 (1985). In both cases, the courts denied recovery in quasi-contract for unjust enrichment. *See also* Palmer, *Restitution*, § 10.7(b) at 426–27 (1978).[2]

The plaintiff seems to argue that, even if the defendants had no obligation to do the construction, they are liable because they accepted the improvements by doing their own residential construction after the improvements were completed. The magistrate agreed, concluding that the defendants' rapid decision to build a house on their newly-improved property shows that they benefited from the plaintiff's work.

Yet, what the defendants did with their property after the construction ended is irrelevant to the instant motion. To be sure, the defendants' post-construction actions demonstrate that they derived a benefit from the construction, but the receipt of benefits does not suffice to render a person liable. *Carriage Way*, 139 Ill.App.3d at 548, 94 Ill.Dec. 97, 487 N.E.2d 974. There must be some injustice in allowing him to keep them. The fact that the defendants made use of the improvements does not make their retention of the benefits unjust. *See* 2 Palmer, *Restitution*, § 10.10 (1978). A person who tells some kids on his block that he does not want his car washed for $5.00 does not become liable after they wash it anyway merely because he decides to take his clean car for a ride.

It appears that what was motivating the magistrate in ruling for the plaintiff was her sense that the defendants really wanted the work done, but calculated that the plaintiff would do it even if they refused to pay. Yet, such a search for underlying motive has no place in a quasi-contract claim. If the defendants' Agreement with the City did not require them to do the work, then they had every right to refuse to do it, and every right to reject the plaintiff's efforts to force them to pay for it.

So we are back to the question raised above: Did the Agreement unqualifiedly require the owners of Westminster lots to construct the improvements, or did it require them to do so only if they chose to develop the property? The complaint alleges that the Agreement required lot owners "to make common facilities improvements to the subdivision as a whole and to each lot individually *prior to developing the lots [they] owned.*" (Emphasis added.) This suggests that construction was required only if and when the owners decided to develop the property. But the Agreement itself, which the plaintiff has attached to his complaint, suggests that the owners were required to make the improvements within the ten year life of the Agreement regardless of whether they chose to undertake further development.

This contradiction between the complaint and the attached Agreement creates a problem. Since exhibits attached to a complaint become part of the pleadings, perhaps the court should accept it as part of the complaint, and allow the plaintiff to proceed on a contribution theory. On the

---

**2.** In both *Knaus* and *Carriage Way*, the courts put much stock in the fact that the defendants had indicated before the work was done that they had no intention to pay for it. That is the case here as well, but it is worth noting that this fact is really not relevant to an action in quasi-contract. A party's silence in the face of work which benefits him may give rise to an action under a theory of an implied-in-fact contract, *Pope v. Speiser*, 7 Ill.2d 231, 237–38, 130 N.E.2d 507 (1955), but it does not bear on the question of whether a court will find a legal duty to reimburse on a quasi-contractual theory.

Thus, for example, had the defendants watched the plaintiff do the construction and said nothing, the plaintiff might have a claim that this silence constituted an implied promise to pay their share of the work. But, conversely, had the defendants been out of town when the work was done, and therefore unaware of the work, there would be no implied-in-fact contract and, hence, no right of action. Because the defendants here expressly indicated their unwillingness to pay prior to the construction, the plaintiff wisely has not alleged the existence of an implied-in-fact contract with them. But this fact alone does not preclude him from bringing an action for quasi-contractual relief.

other hand, the plaintiff is the master of his complaint, and if he chooses to construct his case in a certain way, it would seem inappropriate for this court to force another construction upon him.

Rule 8(b) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the complaint taken together with its exhibits may allow for a construction giving rise to a valid claim, they do not represent a short and plain statement of this claim. Perhaps this is the result of inarticulate pleading. On the other hand, it may be because there are facts outside the pleadings demonstrating that the plaintiff did not have an obligation to construct the improvements, and therefore has no right to contribution from the defendants.[3] Until this question is answered, there is no point in the case going any further. Accordingly, the court will dismiss the complaint without prejudice, and give the plaintiff 30 days to file an amended complaint clarifying the basis for his claim.

## CONCLUSION

The defendants' motion to dismiss is granted, and the complaint is dismissed without prejudice. The plaintiff may file an amended complaint within 30 days of this ruling. If he does not, the court will enter a final judgment against him dismissing the case with prejudice.

---

**3.** It is worth noting that the confusion in the pleadings has resulted in considerable confusion in the briefs. In their motion to dismiss, the defendants argued that the plaintiff was obligated by the Agreement to construct the improvements on the entire property. In response, the plaintiff argued that he was obligated to do the construction on his eight lots, but not on lot No. 7. Now, in their objections to the magistrate's report, the defendants argue that the plaintiff was not obligated to do anything unless he chose to develop the property. Of course, this court must accept the allegations of the complaint as true. But given the ambiguity of the complaint on this score, this court has no basis for choosing among these three positions in ruling on the motion to dismiss.