OWEN WAGENER AND COMPANY, Plaintiff-Appellant, v. U.S. BANK, Defendant-Appellee.

First District (4th Division)   No. 1—97—3988

Opinion filed June 30, 1998.

James J. Graney, of James J. Graney & Associates, of Schaumburg, for appellant.

Edward P. Freud, of Ruff, Weidenaar & Reidy, Ltd., of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

Real estate brokers earn commissions by bringing together a willing buyer and a willing seller. But there is more to it than that, as this case demonstrates.

Owen Wagener & Co. (Wagener) appeals the trial court's dismissal of its third amended complaint against U.S. Bank (the Bank) with prejudice under section 2—615 of the Civil Practice Law. 735 ILCS 5/2—615 (West 1992). Wagener contends it sufficiently pleaded claims for breach of express contract, breach of implied contract, and *quantum meruit*. We affirm the trial court.

FACTS

Lewis Kaplan (Kaplan) owned commercial property in the Village of Crestwood. Kaplan fell behind on his mortgage with U.S. Bank, and the Bank initiated foreclosure proceedings. Kaplan decided to sell his property and signed a listing agreement with Wagener, a brokerage firm, on June 29, 1994. Under this listing agreement, Kaplan agreed to pay Wagener 6% of the sales price if Wagener found a buyer for the property. (The record does not contain a copy of the listing agreement.)

Wagener found Roderick and Judith Johnson (the Johnsons), who expressed interest in buying the property. The Johnsons began negotiations with Kaplan. On December 9, 1994, they entered into a contract to buy Kaplan's property.

This contract provided: "Seller [Kaplan] agrees to pay a broker's commission to [Wagener] in the amount set forth in the broker's listing contract or as follows: per separate agreement."

The contract included a rider, which provided:

"Purchaser [the Johnsons] acknowledges that this Agreement is expressly subject to the approval of U.S. Bank. If U.S. Bank does not approve this transaction on or before April 14, 1995, this Agreement shall automatically become null and void and the Earnest Money together with all interest thereon shall be returned to Purchaser."

Kaplan signed this contract on March 28, 1995.

On March 17, 1995, Edward Freud, an attorney for U.S. Bank, wrote a letter to Kaplan's attorney. After mentioning he received a copy of the contract, Freud wrote:

"[A]ssuming the buyer and seller agree upon a sales price, which they apparently have not yet done, U.S. Bank will agree to allow the property to be sold and its [mortgage] lien released only if Mr. Kaplan and his partners have a cashiers check at the closing sufficient to pay the remaining amounts due and owing the Bank after application of the net proceeds of sale."

Freud also expressed some concern over other lease provisions and noted the Bank would "hold off on the foreclosure" for only 45 days after execution of the contract.

Kaplan attempted to renegotiate Wagener's commission, hoping to increase the sale proceeds, in that way decreasing the amount he would owe after closing. These negotiations failed, and on May 17, 1995, Freud wrote another letter to Kaplan's attorney:

"It *** is transparent [sic] to me at this juncture that the funds required to satisfy the shortfall at closing will not be available, and it has therefore been determined to proceed with the foreclosure action.

\* \* \*

You may also want to advise the buyer that the Bank will shortly be the owner of the property, and in all likelihood it can be purchased from the Bank."

In August 1995, U.S. Bank obtained title to the property. On January 18, 1996, the Johnsons bought the property directly from the Bank, depriving Wagener of its commission. Wagener filed a complaint against the Bank.

After several initial pleading attempts, Wagener filed its third amended complaint. This complaint included a prefatory "STATEMENT OF FACTS," which summarized the parties' dispute. Wagener alleged it had a commission agreement with Kaplan; this agreement was incorporated into the December 9, 1994, contract between Kaplan and the Johnsons. Wagener acknowledged the contract between Kaplan and the Johnsons was specifically contingent on U.S. Bank's approval, but alleged the Bank "ratified and approved" the contract, including Wagener's commission, in Freud's March 17, 1995, letter.

Wagener also alleged the Bank knew "Wagener procured the Johnson's [sic] and expected to be paid a commission" because the Bank had reviewed the December 9, 1994, contract. After stating the Bank, "knowing that Wagener had a listing agreement with Kaplan," had requested information about the Johnsons, Wagener conceded, "At or about that same time the Johnson's [sic] contacted [Wagener] and requested to be put in contact with U.S. Bank."

Count I, entitled "BREACH OF CONTRACT," alleged in part:

"The actions of U.S. BANK in approving the contract for sale of the Premises and approving [Wagener's] commission constitute a ratification and express contract agreeing to pay Wagener a commission of 6% of the sales price.

\* \* \*

U.S. BANK breached its agreement to pay [Wagener] its commission when it sold the Premises to the Johnson's [sic] on January 18, 1996, but failed to pay [Wagener] its commission \*\*\*."

Count II, entitled "CONTRACT IMPLIED IN FACT," alleged in part:

"[Wagener], through its professional efforts, procured a ready, willing and able purchaser of the premises in the form of the Johnson's [sic] and participated in negotiations and performed services in order to bring the sale to fruition.

\*\*\* By its conduct of contacting Wagener to locate the Johnson's [sic] and selling the premises to the Johnson's [sic], knowing that they were procured by Wagener and that Wagener expected to be paid, the U.S. Bank impliedly contracted to pay [Wagener] a commission \*\*\*.

\*\*\* U.S. BANK received the benefit of [Wagener's] services with full knowledge of [Wagener's] involvement in the transaction.

\*\*\* U.S. BANK breached its implied contract with [Wagener] to pay a commission \*\*\* upon the closing of the sale to the Johnson's [sic]."

Count III, entitled "*QUANTUM MERUIT*," alleged in part:

"U.S. Bank, by selling the premises to the Johnson's [sic], received the benefits of Wagener's efforts in procuring the Johnson's [sic].

\*\*\* U.S. Bank would be unjustly enriched by receiving the benefits of Wagener's efforts without paying a reasonable and customary commission \*\*\*."

On September 26, 1997, the trial court dismissed Wagener's third amended complaint with prejudice for failure to state a cause of action under section 2—615(a). See 735 ILCS 5/2—615(a) (West 1992). This appeal followed.

## DECISION

First, we address a procedural issue before proceeding to the merits of Wagener's appeal.

■ U.S. Bank contends the appendix to Wagener's brief contains three letters that were not exhibits to Wagener's third amended complaint. More importantly, these letters (appendix exhibits A—24, A—25, and A—26) do not appear in the trial court record before this court. "[D]ocuments \*\*\* which are not a part of the trial court record

and were not considered by the trial court[ ] will not be considered on appeal." *Meyerson v. Software Club of America, Inc.*, 142 Ill. App. 3d 87, 91, 491 N.E.2d 150 (1986). This court will not consider these letters.

■ A motion to dismiss under section 2—615(a) of the Civil Practice Law "tests the legal sufficiency of a pleading and a court must accept all well-pleaded facts as true." *Doe v. Calumet City*, 161 Ill. 2d 374, 381, 641 N.E.2d 498 (1994). On appeal, the standard of review for a section 2—615 dismissal is *de novo*. *Hough v. Kalousek*, 279 Ill. App. 3d 855, 665 N.E.2d 433 (1996).

■ A broker is an agent who agrees to act for a principal in a transaction, and the employment contract between the broker and the principal determines the broker's commission. *Bennett & Kahnweiler Associates v. Ratner*, 133 Ill. App. 3d 316, 319, 478 N.E.2d 1138 (1985). "Generally, a broker is entitled to a commission if he is the *procuring cause* of a consummated real estate transaction which he was *employed* to negotiate." (Emphasis added.) *Stone v. Brown*, 162 Ill. App. 3d 405, 409, 515 N.E.2d 384 (1987).

■ This employment contract does not have to be in writing. *In re Estate of Vallerius*, 253 Ill. App. 3d 226, 230, 624 N.E.2d 459 (1993). The parties may create such an employment relationship by written instrument, by oral agreement, or by implication from their conduct. *Arthur Rubloff & Co. v. Drovers National Bank*, 80 Ill. App. 3d 867, 871, 400 N.E.2d 614 (1980); *Dickerson Realtors, Inc. v. Frewert*, 16 Ill. App. 3d 1060, 1063, 307 N.E.2d 445 (1974). In short, a broker can recover on an express written contract, an express oral contract, or an implied contract.

Additionally, a broker can recover on a quasi-contract under the doctrine of *quantum meruit* "where he fails to establish the express contract but does show that services were rendered." *Stephen L. Winternitz, Inc. v. National Bank of Monmouth*, 289 Ill. App. 3d 753, 759, 683 N.E.2d 492 (1997); *Nardi & Co. v. Allabastro*, 20 Ill. App. 3d 323, 327, 314 N.E.2d 367 (1974).

With this background, we examine each count of Wagener's third amended complaint in turn.

## 1. BREACH OF CONTRACT

■ On its breach of express contract claim, Wagener was required to allege: (1) the existence of a contract with U.S. Bank; (2) U.S. Bank's breach of the contract; (3) Wagener's performance under the contract; and (4) damages resulting from the breach. *Klem v. Mann*, 279 Ill. App. 3d 735, 740-41, 665 N.E.2d 514 (1996).

Although Wagener alleges the existence of an express brokerage

contract with U.S. Bank, other contrary allegations indicate "Wagener had a listing agreement with Kaplan." U.S. Bank simply held the mortgage to Kaplan's property and had no employment relationship with Wagener.

■ Wagener seeks to circumvent this problem by contending U.S. Bank ratified the December 9, 1994, contract between Kaplan and the Johnsons, including Wagener's commission.

> "[A]n alleged principal may become liable to compensate the broker for his unauthorized acts by subsequent ratification of the broker's acts. [Citation.] However, it is axiomatic that ratification does not result from the affirmance of a transaction with a third person unless the one acting as agent purported to be acting for the ratifier." *Daley v. G'Sell*, 102 Ill. App. 3d 548, 552, 430 N.E.2d 556 (1981).

The party seeking ratification must allege the essential elements of a ratification. *Arthur Rubloff & Co. v. Drovers National Bank*, 80 Ill. App. 3d at 872. These elements include: (1) timely knowledge on the part of the alleged principal (U.S. Bank) that the broker (Wagener) was participating in the transaction and assuming to act for the principal; and (2) some act that indicates the principal's acceptance of the broker as its agent. *Arthur Rubloff & Co. v. Drovers National Bank*, 80 Ill. App. 3d at 872.

■ Wagener did not allege U.S. Bank knew Wagener acted as the Bank's broker when it found the Johnsons. Instead, Wagener alleged it had a listing agreement only with Kaplan. Further, Wagener did not allege the Bank accepted Wagener as its broker. The supposed ratification by the Bank never occurred.

Wagener alleged Freud's March 17, 1995, letter "ratified and approved" the December 9, 1994, contract, but the letter indicates differently. Freud wrote:

> "U.S. Bank will agree to allow the property to be sold and its lien released only if Mr. Kaplan and his partners have a cashiers check at the closing sufficient to pay the remaining amounts due and owing to the Bank after application of the net proceeds of sale."

Freud also wrote:

> "[T]he Bank would hold off on its foreclosure if it were provided with information demonstrating the [Johnsons'] financial strength, and an otherwise firm contract for the sale of the property subject only to the usual commercial contingencies."

In this letter, U.S. Bank actually withheld its approval pending receipt of money from Kaplan, financial documentation from the Johnsons, and an executed contract. The record does not indicate these events occurred. Wagener's allegations do not accurately reflect Freud's letter. See *Panorama of Homes, Inc. v. Catholic Foreign Mis-*

*sion Society, Inc.,* 84 Ill. App. 3d 142, 145, 404 N.E.2d 1104 (1980) (allegations that conflict with exhibits to a complaint are controlled by such exhibits).

Wagener did not have an express brokerage contract, and the trial court correctly dismissed count I.

## 2. CONTRACT IMPLIED IN FACT

■■ ■ On its breach of implied contract claim, Wagener was required to allege the elements of an express contract and conduct by U.S. Bank indicative of such an agreement.

> "A contract implied in fact is an actual contract; the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either written or oral, while in the latter their agreement is arrived at by a consideration of their acts and conduct." *Barry Mogul & Associates, Inc. v. Terrestris Development Co.,* 267 Ill. App. 3d 742, 750, 643 N.E.2d 245 (1994).

See also *Century 21 Castles by King, Ltd. v. First National Bank,* 170 Ill. App. 3d 544, 548, 524 N.E.2d 1222 (1988); *Heavey v. Ehret,* 166 Ill. App. 3d 347, 354, 519 N.E.2d 996 (1988).

> "Where a real estate broker shows that he has been instrumental in bringing parties together and the transaction is consummated, he is to be regarded as the procuring cause of the sale and entitled to his commission. [Citation.] It is sufficient if the sale is effected through the efforts of the broker or through information derived from him." *Dross v. Kirk,* 8 Ill. App. 2d 536, 540-41, 132 N.E.2d 49 (1956).

Illinois courts have relied on the procuring-cause approach "to *imply* a contract between the broker and seller if the broker found a purchaser who was ready, willing and able to perform." (Emphasis in original.) *Arthur Rubloff & Co. v. Comco Corp.,* 63 Ill. App. 3d 362, 368, 380 N.E.2d 15 (1978). However, in the context of implied brokerage contracts, the alleged principal must say or do something that shows it accepted the broker as its agent. *Arthur Rubloff & Co. v. Drovers National Bank,* 80 Ill. App. 3d at 873.

■■ Wagener made the bare allegation that U.S. Bank contacted Wagener for information about the Johnsons, "knowing that they were procured by Wagener and that Wagener expected to be paid," thus impliedly employing Wagener as a broker. Wagener may have procured the Johnsons, but for Kaplan, not U.S. Bank.

Wagener and the Bank did not have an implied brokerage contract. The trial court correctly dismissed count II.

### 3. QUANTUM MERUIT

■ Finally, on its *quantum meruit* claim, Wagener was required to allege: (1) it performed a service to benefit U.S. Bank; (2) it performed this service nongratuitously; (3) U.S. Bank accepted this service; and (4) no contract existed to prescribe payment of this service. *Rohter v. Passarella*, 246 Ill. App. 3d 860, 617 N.E.2d 46 (1993); *Village of Clarendon Hills v. Mulder*, 278 Ill. App. 3d 727, 663 N.E.2d 435 (1996); see *First National Bank v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 365, 688 N.E.2d 1179 (1997).

The basis for *quantum meruit* recovery is equitable: "receipt by a defendant from a plaintiff of a benefit which is unjust for him to retain without paying for it." *Romanek-Golub & Co. v. Anvan Hotel Corp.*, 168 Ill. App. 3d 1031, 1041, 522 N.E.2d 1341 (1988); *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.*, 87 Ill. App. 3d 480, 486, 408 N.E.2d 1069 (1980); *Arthur Rubloff & Co. v. Drovers National Bank*, 80 Ill. App. 3d at 875; *Bau v. Sobut*, 50 Ill. App. 3d 732, 738, 365 N.E.2d 724 (1977).

In *Panorama of Homes*, Lewis University entered into a written listing agreement with Sheridan, a real estate broker. Under the agreement, Sheridan would receive a commission for helping the university obtain a buyer for certain property. The university owned part of this property and held a right of first refusal over the remainder, which was owned by the Catholic Foreign Mission Society (CFMS). Meanwhile, Sheridan entered into an agreement with a cooperating broker, Panorama, to split any commission if Panorama obtained a buyer for the property. Panorama found potential buyers but could not complete a sales contract. CFMS then sold the property directly to the potential buyers without paying Panorama's commission.

The court observed:

"[Panorama's] chief allegation appears to be that CFMS knew [Panorama's] past services pursuant to the Lewis-Sheridan listing agreement, and since this resulted in a benefit to CFMS, it should compensate [Panorama]." *Panorama of Homes*, 84 Ill. App. 3d at 149.

The court held Panorama's complaint failed to state a *quantum meruit* claim against CFMS. *Panorama of Homes*, 84 Ill. App. 3d at 148. The court reasoned Panorama had a brokerage contract with Lewis University, not CFMS, and had no expectation of receiving its commission from CFMS. *Panorama of Homes*, 84 Ill. App. 3d at 148. The court further reasoned CFMS had never accepted Panorama as its broker. *Panorama of Homes*, 84 Ill. App. 3d at 148.

In *Daley*, G'Sell entered into an oral agreement with Daley, a real estate broker. Under the agreement, Daley would receive a commission for helping G'Sell obtain certain property. Daley performed

extensive services for G'Sell and negotiated a sales contract for the property with its owner, Weinstein. After a fire damaged the property, Weinstein misrepresented to Daley the property was no longer on the market. Several months later, G'Sell and his business partners purchased the property directly from Weinstein without paying Daley's commission.

After discussing quasi-contract law, the court held Daley could not allege a *quantum meruit* claim against G'Sell's partners. *Daley*, 102 Ill. App. 3d at 551. The court reasoned the partners were not parties to the brokerage contract between Daley and G'Sell, and thus Daley had no expectation of receiving its commission from them. *Daley*, 102 Ill. App. 3d at 552.

The brokers in *Panorama of Homes* and *Daley* did not have brokerage contracts with their alleged principals; these principals were third parties to the brokerage contracts. Similarly, Wagener did not have a brokerage contract with its alleged principal, U.S. Bank. Wagener had a listing agreement only with Kaplan. Wagener had no expectation of receiving its commission on the December 9, 1994, contract from the Bank.

■ Although Wagener alleged it expected to receive a commission from the December 9, 1994, contract, Wagener does not allege in count III it gave information about the Johnsons to U.S. Bank nongratuitously, expecting a commission for giving the Bank an address and a phone number. Wagener merely alleged it "was instrumental in bringing the parties together." Wagener did not allege it expected the Bank to pay for the information about the Johnsons. Wagener did not allege this expectation arose from the Bank's request for information, rather than the December 9, 1994, contract.

There is surface attraction to Wagener's unjust enrichment contention. It did find the buyers. The Bank sold the property to the Johnsons without having to pay a commission. But the decisions compel us to hold that Wagener did not plead a *quantum meruit* claim against the Bank. The trial court correctly dismissed count III.

CONCLUSION

We agree with the trial court's conclusion that Wagener failed to allege a cause of action in any of its three counts, dismissing the case with prejudice after the plaintiff made four attempts at filing a viable action. The ruling granting the defendant's motion to dismiss with prejudice is affirmed.

Affirmed.

CERDA, P.J., and SOUTH, J., concur.