**KLESMAN & ASSOCIATES, INC., an Illinois Corporation, Plaintiff,**

v.

**WEATHERCO, INC., a Pennsylvania Corporation and General Electric Company, a New York Corporation, Defendants.**

**No. 98 C 3257.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 8, 2000.

Donald B. Levine, Jonathan Mandel Weis, Michael T. Murphy, Levin & Ginsburg, Ltd., Chicago, IL, for Klesman & Associates, Inc., plaintiff.

Jay A. Frank, Tami J. Reding–Brubaker, Aronberg, Goldgehn, Davis & Garmisa, Martin M. Ruken, Frank, Miller, Melamed & Tabis, P.C., Chicago, IL, for Weatherco, Inc.

Jerome William Pope, Bradley C. Graveline, Ilene Lin Bloom, Winston & Strawn, Chicago, for General Electric Company, defendant.

## MEMORANDUM OPINION
## AND ORDER

PALLMEYER, District Judge.

Plaintiff Klesman & Associates, Inc. (hereinafter "Klesman"), a manufacturer's consultant, alleges that Weatherco, Inc. (hereinafter "Weatherco") a manufacturer of weather-proofing products, owes Klesman money pursuant to a consulting agreement between the two companies. Weatherco purported to terminate the agreement with Klesman, and subsequently entered into a licensing agreement with General Electric Company (hereinafter "GE"). Klesman claims that by virtue of its agreement with Weatherco, GE accepted an assignment of Weatherco's rights and obligations with respect to Klesman.

Klesman filed a six-count First Amended Complaint against Klesman and GE. GE asks the court to dismiss the claims against it. Specifically, GE has moved to dismiss Count V of Klesman's First Amended Complaint, in which Klesman seeks recovery from GE under a quantum meruit theory. GE seeks summary judgment in its favor on Count VI, in which Klesman alleges that GE is liable for anticipatory repudiation of the consulting agreement which, according to Klesman, was assigned by Weatherco to GE. For the reasons set forth below, both motions are granted.

## FACTUAL BACKGROUND

The court takes the following facts from the parties' Local Rule 12(M) and 12(N) statements of material facts and supporting materials.[1] Larry Klesman is the President of Plaintiff Klesman & Associates, Inc. ("Klesman"), an Illinois corporation with its principal place of business in Lincolnshire, Illinois. (Defendant General Electric's Rule 12(M)(3) Statement of Material Facts ("GE's 12(M)") ¶ 1, 2; Plaintiff's Response to Defendant General Electric's Rule 12(M) Statement of Material

Facts ("Pltf.'s Resp. to GE's 12(M)") ¶ 1, 2; Klesman's First Amended Complaint for an Accounting and Other Relief ("Compl.") ¶ 1). Klesman markets, sells and distributes a broad range of products as a representative for numerous manufacturers and product vendors. (Compl. ¶ 4.) Defendant Weatherco, Inc., a Pennsylvania corporation with its principal place of business in Conshohocken, Pennsylvania, (id. ¶ 2), manufactures various waterproofing and sealing products for use on wood, concrete and masonry. (Id. ¶ 5.) Defendant General Electric ("GE") is a New York corporation with its principal place of business in Waterford, New York. (Id. ¶ 3.) Through its GE Silicones unit, GE is engaged in the business of manufacturing, marketing, and selling various caulking, waterproofing and sealing products for use on wood, concrete and masonry. (Id. ¶ 6.)

In August 1996, Larry Klesman met Weatherco's president, Kenneth Rossi ("Rossi") at a trade show in Chicago, Illinois. (Id. ¶ 9.) At this time, Larry Klesman and Rossi discussed the possibility of an arrangement whereby Klesman would act as Weatherco's sales and marketing manager for Weatherco's products. (Id.) Around October 14, 1996, Weatherco sent Klesman a letter of intent entitled "Scope of Agreement," outlining the proposed relationship between the two parties. (Id. ¶ 10.) The parties did not finalize their agreement until April 1997, but Klesman began to perform services for Weatherco under what became known as the " Consulting Agreement" on October 14, 1996. (Id. ¶¶ 11, 12; Consulting Agreement, Ex. 2 to Klesman's First Amended Complaint.) Under the terms of that agreement, Klesman agreed to act as Weatherco's exclusive sales and marketing agent in North America. (Consulting Agreement, ¶ 1.) Weatherco agreed to compensate Klesman by paying a variable commission based upon Weatherco's gross sales revenue of

1. The parties filed Local Rule 12(M) and 12(N) statements in accordance with this district's local rule. The court's local rules have been amended, effective September 1, 1999, to reflect a new rule number, Local Rule 56.1. The substance of this rule has not been altered. The court will use the old nomenclature for the sake of clarity.

the products in the United States, Canada, Mexico, and South America. (*Id.* ¶ 4.) The parties contemplated that Klesman would assist Weatherco in the negotiation of "strategic ventures," and in particular that Klesman would " immediately make efforts to negotiate with GE Silicone in connection with their interest in a private label agreement with [Weatherco]." (*Id.* ¶ 3(c).) In Paragraph 10 of the Consulting Agreement, Klesman and Weatherco agreed that the agreement would "inure to the benefit of and shall be binding upon the respective successors and assigns of the parties," but that the parties "may not assign their rights or interests and delegate their obligations hereunder without the prior written consent of the other party which consent shall not be unreasonably withheld." (*Id.* ¶ 10.) The Agreement provided, further, that it could be terminated by Weatherco "upon thirty (30) days prior written notice for 'cause' at any time during the term hereof." (*Id.* ¶ 5.)

On June 10, 1997, Ken Rossi, Weatherco's president, sent Larry Klesman a letter stating, in part, "your contract is hereby terminated immediately because of lack of fulfillment." (GE's 12(M) ¶ 13, Rossi letter of 6/10/97, Ex. D to GE's 12(M); Pltf.'s Resp. to GE's 12(M) ¶ 13.) Klesman characterizes Rossi's letter as "only [an] attempt[ ] to terminate the Consulting Agreement," (Pltf.'s Resp. to GE's 12(M) ¶ 13, 14), but does not otherwise explain why the letter was not effective to terminate the Agreement.

On April 1, 1998, Weatherco and GE entered into the "License Agreement" whereby Weatherco transferred to GE certain technical information and licenses. (GE's 12(M) ¶ 15; Pltf.'s Resp. to GE's 12(M) ¶ 15.) Klesman is not a party to the License Agreement between GE and Weatherco, nor does the License Agreement make reference to Klesman or to the Consulting Agreement between Klesman and Weatherco. (GE's 12(M) ¶ 17, 18; Pltf.'s Resp. to GE's 12(M) ¶ 17, 18.) Prior to the License Agreement, on December 12, 1997, Klesman's attorney sent a letter to GE advising GE of the Consulting Agreement between Klesman and Weatherco. (GE's 12(M) ¶ 21; Pltf.'s Resp. to GE's 12(M) ¶ 21) and advising GE that Weatherco could not assign its rights under the Consulting Agreement without Klesman's prior written consent. (GE's 12(M) ¶ 22; Pltf.'s Resp. to GE's 12(M) ¶ 22.) GE did not respond to the letter, and it is undisputed that Klesman never consented to any assignment of the Consulting Agreement to GE. (GE's 12(M) ¶ 24, 25; Pltf.'s Resp. to GE's 12(M) ¶ 24, 25.)

Klesman's six-count Amended Complaint against Weatherco and GE alleges that Weatherco breached the Consulting Agreement by, *inter alia,* failing to pay commissions and by failing to provide an accounting of Weatherco's gross sales. In what is now Count VI of its complaint, Klesman alleged that GE is an assignee of the Consulting Agreement between Klesman and Weatherco and is liable for anticipatory repudiation of that agreement. (Compl.¶¶ 35–37.) Judge George Marovich, to whom the case was originally assigned, denied GE's motion to dismiss that claim, reasoning that Klesman might be able to present facts supporting its claim that Weatherco assigned its rights and obligations under the Consulting Agreement to GE. Judge Marovich warned, however, that " ultimately the facts may reveal (1) Weatherco and GE never 'intended' to assign any rights or obligations with respect to the Consulting Agreement; or (2) Weatherco failed to properly secure the written consent of Klesman for its attempted assignment to General Electric, and the alleged assignment is therefore invalid." *Klesman & Assocs., Inc. v. Weatherco, Inc.,* No. 98 C 3257, 1998 WL 719913, *3 (N.D.Ill. Oct.7, 1998). GE has now moved for summary judgment in its favor on the anticipatory repudiation claims.

In Count V, Klesman alleges that GE benefitted from the marketing, pricing, and planning services that Klesman performed for Weatherco and is therefore lia-

ble to Klesman under a *quantum meruit* theory. (Compl.¶¶ 32–35.) GE moves for dismissal of this count for failure to state a claim for relief.

### DISCUSSION

Plaintiff Klesman seeks to hold GE responsible for breach of the Consulting Agreement between Klesman and Weatherco. Although there are circumstances in which a third party can be held liable for a breach of contract between two contracting parties, the court concludes this case is not one of them.

■ In his ruling denying GE's motion to dismiss Klesman's original anticipatory repudiation claim, Judge Marovich focused the parties' attention on the issue of consent to assignment of Weatherco's rights and obligations under the Consulting Agreement to GE. Plaintiff has failed to raise a dispute of fact concerning that issue. There is no evidence that the parties consented to the assignment of Weatherco's rights. Indeed, Klesman concedes that no mention of either Klesman or the Consulting Agreement exists in the Licensing Agreement.

The court notes, further, a threshold issue that may be dispositive as well. Although the parties have not fully addressed the matter (guided, the court presumes, by Judge Marovich's previous ruling), the court notes its uncertainty as to whether an agreement existed at all at the time of the purported assignment. Ten months prior to the alleged assignment, Weatherco had effectively terminated the Consulting Agreement by letter. Klesman suggests that the termination letter "only attempted" to terminate the agreement, but has offered not evidence that an issue of fact exists with respect to the effectiveness of the termination. The court need not reach the issue, however, in order to conclude that GE is entitled to summary judgment in its favor on Count VI.

■ Klesman's effort to state a quantum meruit claim against GE fares no better. In order to state a claim for relief under that theory, Klesman must allege that it performed a service to GE; that the service was not performed gratuitously; that GE accepted the service; and that there was no contract requiring payment for the service. *Owen Wagener & Co. v. U.S. Bank*, 297 Ill.App.3d 1045, 1053, 232 Ill.Dec. 160, 697 N.E.2d 902, 908 (1st Dist. 1998). Where, as in this case, services are performed pursuant to a contract, a third party is "not liable on the basis of an implied understanding even if [it is] benefitted by the work." *Daley v. G'Sell*, 102 Ill.App.3d 548, 551, 58 Ill.Dec. 524, 430 N.E.2d 556, 559 (1st Dist.1981). Here, as in *Daley*, the services for which Klesman seeks compensation were performed pursuant to Klesman's contract with another party, in this case the Consulting Agreement between Klesman and Weatherco. Notably, in Count IV of the First Amended Complaint, Klesman seeks recovery from Weatherco for the same services for which it seeks to hold GE liable in Count V.

The existence of a contract for Klesman's services bars Klesman from recovering for those services on the quantum meruit theory alleged in Count V. Because there is no evidence that Weatherco's obligations under the Consulting Agreement were assigned to GE, GE is not liable to Klesman for anticipatory repudiation as alleged in Count VI.

### CONCLUSION

Defendant GE's motion for summary judgment on Count IV (Doc. 43–1) (now directed at Count VI of the First Amended Complaint) is granted. Defendant GE's motion to dismiss Count V of the First Amended Complaint (Doc. 50–1) is granted. All claims against Defendant GE are dismissed.