ROBERT J. ANDERSON *et al.*, Plaintiffs-Appellees, *v.* ROBERT W. GEWECKE *et al.*, Defendants-Appellants.

First District (1st Division) No. 61469

Opinion filed January 19, 1976.—Rehearing denied March 3, 1976.

Curtis, Marks, Katz, Walker & Blatt, of Chicago (Donald L. Johnson, of counsel), for appellants.

Concannon, Dillon, Snook & Morton, of Chicago (Herbert Morton and Jeffrey T. Whipple, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Robert J. Anderson, Cyril J. Lauer and R. J. Anderson, Inc., a corporation (plaintiffs) brought this action against Robert W. Gewecke, Ben Lytle and George Hitchcock (defendants). In their amended complaint plaintiffs sought alternatively a declaratory judgment fixing the rights of the parties with reference to an unexecuted limited partnership agreement involving certain real estate; or imposition of a constructive trust based on violation of a fiduciary relationship and also compensation for services rendered by plaintiffs to defendants. After trial without a jury, the court entered judgment in favor of plaintiffs for $35,000. Defendants appeal.

The trial court granted plaintiffs this judgment on the theory of compensating them for services rendered by them to defendants in finding and bringing a real estate transaction to defendants.

The evidence was conflicting and raised issues of credibility for determination by the trial court. Plaintiff Anderson testified that he is an attorney and real estate broker. He was acquainted with Gewecke for some 15 years. Anderson was a customer of the bank with which Gewecke was associated. Gewecke told Anderson that he and his friends might be interested in acquiring vacant land in Arizona and that they

were prepared to invest about $80,000 each. He asked Anderson to advise him if such land could be found. Anderson made a trip to Arizona during April of 1972. Before he went, he informed Gewecke that he was going to inspect a parcel of property. Gewecke asked that Anderson advise him if his trip disclosed that the property would be a good investment.

When he returned from Arizona, Anderson saw Gewecke again. He had prepared and forwarded to Gewecke a lengthy agreement for a limited partnership. Gewecke read the document in Anderson's presence. This agreement, never executed by the parties, provided for a limited partnership including the three plaintiffs as general partners and unspecified persons as limited partners. The limited partners were to participate in the transaction by purchase of units priced at $8,000 each.

Anderson further testified that Gewecke said he was interested in this transaction and wanted to know if there was room for his friends. He stated that Gewecke had planned to invest $64,000 in the project over a five-year period. Gewecke requested additional copies of the document which Anderson furnished.

Anderson next met with defendants Gewecke, Lytle and Hitchcock in late April of 1972. Anderson told them that the general partners would get a fee of $72,000 for their services as finders of the transaction. This was calculated as 10% of the purchase price of the real estate. Defendant Lytle stated that the size of the finder's fee was unimportant as the deal was good and the investors would make money. We note here that defendant Lytle denied making these statements at this meeting. Anderson also testified that defendant Hitchcock asked if Anderson had the property tied up and Anderson replied negatively. At this conversation defendants stated that they were each interested in participating in the venture by way of a purchase of eight units priced at $64,000.

Anderson further testified that he met with all three of the defendants during May of 1972. They advised that their attorneys had reviewed the documents. They stated that they wished to become general partners which Anderson refused. They then told him that they could obtain participation for 75% of the total price of the land. Anderson then stated that he thought they could become general partners if they were willing to accept general liability. Defendant Hitchcock again asked if Anderson had the property tied up. Hitchcock also stated that he wanted to make a personal inspection of the property before his group would participate in the deal. Anderson gave Hitchcock the telephone number of plaintiff Lauer who lived in Arizona and agreed that Lauer would show Hitchcock the property.

Several days later Anderson called Hitchcock who told him that he had seen and liked the property and that his group would like to proceed with the transaction. Anderson testified that Hitchcock then offered him $35,000 if he would relinquish his interest in the property but Anderson refused. That same day Anderson met with defendants Lytle and Hitchcock. They told him that their group wanted to purchase the property but as general partners. Anderson responded that he would accept Lytle or Hitchcock as general partners. He testified that he did not wish to enter into a general partnership with other people whom he did not know.

Shortly thereafter, Anderson was advised by a telephone call from the seller of the property that Lytle or Hitchcock were attempting to buy it. Anderson reported this to Gewecke who told him that he had heard something of the sort but that he would not participate without Anderson. It appears that the land was actually acquired by defendants to the exclusion of plaintiffs. The purchase price as originally contemplated was $720,000 which would account for the finder's fee figure of 10% or $72,000. However, defendants acquired the land for $685,000 thus accomplishing a price reduction of $35,000.

Plaintiff Lauer testified that Anderson had advised him that Hitchcock was going to Arizona. Anderson asked Lauer to show the property to Hitchcock which Lauer had done. Lauer was not a broker but he had assisted the defendants by showing the property and telling Hitchcock about it. Lauer had planned to participate in the investment.

Defendant Hitchcock is a land developer and investor, sometimes as a partner with defendant Lytle. He testified that he had met with Anderson in April 1972 to discuss Anderson's offer and that he met once again with Anderson before his trip to Arizona. Neither he nor defendants Lytle or Gewecke were prepared to invest in the land before he made that trip. He denied that he had told Anderson, in May of 1972 before the trip, that he was interested in acquiring the property. He denied offering Anderson a fee of $35,000. He thought that the Anderson group was to buy the land for $800,000 but defendant acquired it for $685,000.

Hitchcock further testified that the fee discussed with Anderson was $80,000 but he said that this was too high and Anderson had indicated he would reduce it. Hitchcock testified that he learned the location of the land when he first met with Anderson and that he needed no assistance from plaintiff Lauer in locating the property.

Defendant Gewecke testified that he first learned about the land from Anderson and that he had furnished the other defendants with copies of the documents given to him by Anderson. He stated that he had never committed himself to the deal because Anderson's fee was excessive

and he thought that $80,000 was too high a commission. He was never told that Anderson give him information in confidence. He denied making a promise to pay Anderson and denied that he had asked Anderson to perform services. He first learned that defendants Hitchcock and Lytle were going to buy the land two weeks after Hitchcock's return from Arizona. He did not know that Hitchcock had gone to Arizona until after the trip.

Defendant Lytle testified that he had met several times with Hitchcock and Anderson out of the presence of defendant Gewecke. At the third meeting they told Anderson that they were not interested in his deal but intended to create their own transaction in which Anderson could participate. Anderson refused. Lytle testified that he never told Anderson that he and his associates would themselves purchase the land to Anderson's exclusion. He further testified that he never asked Anderson to acquire information for him and never offered to pay Anderson for any services. He could not have located the property without Anderson's help after the first two meetings between the parties. He testified that he and Hitchcock told Anderson they were not interested in the transaction as presented by Anderson. When he first heard about the proposed trip to Arizona by Hitchcock, he did not know the reason for this but had an idea that it was for inspection of the land. He then thought it was likely that he and Hitchcock might buy the land themselves but at that point there still could have been a deal in which Anderson participated. The defendants first told Anderson about the possibility that they might put their own deal together after Hitchcock had returned from Arizona. On May 27, 1972, defendants paid earnest money to the seller and signed a purchase contract for the land.

In rebuttal, Anderson testified that he was never advised that defendants planned to acquire the property for themselves. Defendants did ask him if he wished to participate in a large general partnership with others and he refused.

Both sides of the controversy raise numbers of contentions. Plaintiffs' amended complaint alleges breach of a fiduciary relationship by defendants so as to result in the imposition of a constructive trust and also unjust enrichment of defendants from the services rendered by plaintiffs pursuant to an implied contract. From our examination of the briefs and the record and after oral argument, we have concluded that there are two determinative issues which must be decided:

1. Whether the services were rendered by plaintiffs to defendants under such circumstances that the law will imply an agreement to compensate plaintiffs upon a quasi-contractual basis; and

2. Assuming an affirmative answer to this problem, whether the amount awarded by the trial court is justified from the record.

## I.

■■ It is clear from the record that plaintiffs did render services to the defendants at the special instance and request of defendant Gewecke. The remaining defendants by their acceptance of these services and by their participation in the transaction should be deemed to have ratified and accepted this situation. It is true that there was no express written contract between the parties. Similarly, there was no express oral agreement between them for compensation to be paid to plaintiffs. It is also true that important services were rendered by plaintiffs which resulted in valuable benefits being conferred upon defendants.

■■ It is undisputed that plaintiffs first brought to the attention of defendants the possibility of purchasing and developing the land in Arizona. Plaintiff Anderson did this at the express request of defendant Gewecke. In this regard plaintiffs performed the function of a finder. Plaintiffs were the procuring cause of bringing the business opportunity to the attention of defendants. According to the testimony of plaintiffs, denied by defendants, valuable services were thus furnished by plaintiffs to defendants. As this court has previously pointed out, the only distinction between a finder and a broker is that the former has no duties to perform in connection with negotiating the contract. *Modern Tackle Co. v. Bradley Industries, Inc.,* 11 Ill.App.3d 502, 507, 297 N.E.2d 688.

■■ It is an old and established principle that without an express oral or written agreement for compensation, absent family relationship between the parties, where one person "renders valuable services to another which are knowingly accepted by such other, the law will imply a promise to pay a fair and reasonable compensation for such services." (253 Ill. 164, 172.) This principle is the basic theory of an equitable proceeding for enforcement of an implied contract so as to prevent unjust enrichment of one person at the expense of another. *First National Bank v. Glenn,* 132 Ill.App.2d 322, 324, 270 N.E.2d 493, quoting from *Board of Highway Commissioners v. City of Bloomington,* 253 Ill. 164, 172, 97 N.E. 280. See also *Comm v. Goodman,* 6 Ill.App.3d 847, 854, 286 N.E.2d 758.

■■ The existence of a relationship between the parties which will give rise to an implied agreement to compensate for services rendered is an issue of fact. In the case before us the finding of the trial court regarding liability of defendants to compensate plaintiffs is strongly supported by the record. It is clear that valuable services were rendered by plain-

tiffs and accepted by defendants. The testimony of plaintiffs is that there were verbal promises to pay them a fee for services rendered. Although defendants denied this evidence, there is testimony by defendants Gewecke and Hitchcock that the objection by defendants to the fee requested by plaintiffs was on the basis that it was too high, as distinguished from a complete lack of agreement for payment of any compensation to plaintiffs. The existence of these verbal promises to compensate plaintiffs is actually no essential to plaintiffs' case because, as shown, in view of the rendering of the services and the acceptance thereof by defendants, the law implies a promise to pay. We cannot say that this conclusion reached by the trial court is contrary to the manifest weight of the evidence. *Reese v. Melahn*, 53 Ill.2d 508, 512, 513, 292 N.E.2d 375.

## II.

■■ Defendants urge strongly that there is no proof in the record regarding the amount of the judgment in favor of plaintiffs. The determination of damages is also an issue of fact. On this precise point there is testimony by plaintiff Anderson that he told all three of the defendants that the three plaintiffs as general partners would receive a fee of $72,000 for their services as finders which was calculated on the basis of 10% of the purchase price of the real estate. Actually the parties discussed financing the total amount of $800,000 for the entire transaction and 10% of this would have been $80,000. However, the difference between $720,000 and $800,000 was justified as including an amount for expenses.

Anderson testified that this fee of $72,000 was approved by defendant Lytle. Defendants denied this testimony. Anderson further testified that at a later time he was offered $35,000 by defendant Hitchcock if he would relinquish all of his interest in the transaction. This is denied by defendants. The record also shows that defendant acquired the property for $685,000, a reduction of $35,000 from the amount of $720,000 as originally contemplated. Thus, there appears some logical and arithmetical justification for existence of an offer by defendants to pay plaintiffs this sum of $35,000.

In any event, the amount to be awarded to plaintiffs is purely a factual issue which it was the duty of the experienced trial judge to determine. Defendants attack this determination by the trial judge and have carefully scanned the record for statements by the trial court regarding his ruling on the amount due. The trial judge correctly pointed out, as above shown, that defendants saved $35,000 from the purchase price by eliminating plaintiffs from the transaction and acquiring the property with-

out their knowledge. The trial judge was also aware of testimony by plaintiff Anderson that defendants had made an offer in this amount to him.

■■ The reasoning of the trial court from this premise is purely logical. Accepting the credibility of Anderson's testimony in preference to the general denials by defendants, which the trial court was justified in doing, it is fair to assume that defendants would not have offered this amount to plaintiff Anderson unless they felt that it was a fair and reasonable amount. The trial court then asked plaintiffs and their attorney whether they would accept $35,000 and eliminate the need of further proceedings. After a short pause, wherein plaintiffs and their counsel conferred, counsel for plaintiffs told the court that a judgment in that amount would be fair and equitable. We find no question arising from the fact that no witness testified directly to the exact amount found by the trial court. See *Comm v. Goodman*, 6 Ill.App.3d 847, 854, 855, 286 N.E.2d 758.

This court may not set aside factual results reached by the trial court except when those results are manifestly contrary to the weight of the evidence. (*Reese v. Melahn*, 53 Ill.2d 508, 512, 513, 292 N.E.2d 375.) In our opinion, the judgment entered by the trial court is not contrary to the manifest weight of the evidence but is amply supported thereby.

Judgment affirmed.

BURKE and SIMON, JJ., concur.