**MIDCOAST AVIATION, INC.,**
**Plaintiff–Appellee,**

v.

**GENERAL ELECTRIC CREDIT CORP.,**
**Defendant–Appellant.**

No. 89–2462.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1990.

Decided July 24, 1990.

Rehearing and Rehearing En Banc Denied Aug. 30, 1990.

Gene Brockland, Paul Seele, St. Louis, Mo., Richard L. Schnake, Matthew F. Trokey, Neale, Newman, Bradshaw & Freeman, Springfield, Mo., for plaintiff-appellee.

Bruce D. Livingston, Jim J. Shoemake, David Streubel, Guilfoil, Petzall & Shoemake, St. Louis, Mo., for defendant-appellant.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

This is a diversity action involving Illinois law. In the court below Appellee Midcoast Aviation, Inc. sought to recover *quantum meruit,* or "as much as it deserved," from appellant General Electric Credit Corp. ("GECC"). Trial was held before a jury. Proof was put on and jury instructions were given, all subject to objections. The jury found Midcoast deserving of recovery, and deserving in the amount of $93,988.55. GECC thought the jury never should have received the case: it made a motion for directed verdict at the end of Midcoast's case and a motion for j.n.o.v. after the jury returned its verdict. The court below was of another mind: it denied both motions. It also entered judgment against GECC.

GECC now appeals. It believes that Midcoast never established a legal case to recover *quantum meruit.* Moreover, GECC believes that the trial court improperly instructed the jury on the elements necessary to establish *quantum meruit* liability and the standard necessary to measure *quantum meruit* recovery. GECC also believes the court misruled on certain questions of evidence. We conclude that Midcoast presented a legally sufficient case to recover *quantum meruit.* We conclude too that the trial court properly ruled on questions of evidence and properly instructed the jury on the elements necessary to establish *quantum meruit* liability. Nevertheless, a new trial on damages is necessary, for we also conclude that the trial court's instruction on the standard necessary to measure *quantum meruit* recovery was deficient.

## I.

This case involves three parties, cohorts in a business adventure.[1] Leading the adventure was American Aviation Industries, Inc. ("AAI"). AAI had big ideas for the conversion of Jetstar aircraft into Fanstar aircraft. Jetstars were old clunkers, cramped and noisy, and they spent a lot of time at the fuel pump. AAI wanted to convert these clunkers into modern aircraft by replacing their noisy, fuel inefficient engines with quiet, fuel efficient ones. It also wanted to redo the Jetstar's avionics and interior. All of this would allow the converted Jetstars—the Fanstars—to fly more people, more comfortably, further distances, to more noise-sensitive airports, using less fuel. What AAI wanted to do and

---

1. Because we are reviewing a district court's denial of a motion for directed verdict or a motion for j.n.o.v., we present the evidence and its reasonable inferences in the light most favorable to Midcoast. *See David Copperfield's Disappearing, Inc. v. Haddon Advertising Agency, Inc.,* 897 F.2d 288, 291 (7th Cir.1990).

what it could do, however, were two different things. AAI was only an idea shop. The "Fanstar" project needed money to take off, money that AAI did not have.

So AAI sought money. It found GECC, which had plenty. For various reasons GECC liked AAI's idea, and decided to finance the project.

With GECC's money, AAI got "Fanstar" off the ground. Stage one was to convert a Jetstar to a Fanstar in a manner worthy of Federal Aviation Administration certification. With GECC loans, AAI obtained a Jetstar to convert. This was the "prototype" Jetstar. Stage two was to market the future Fanstar's modern conveniences. The prototype could not be used for this. Its conversion, tailored to impress FAA technocrats not aircraft consumers, would leave its interior in a state of disarray. For marketing purposes AAI needed another Jetstar, the interior of which it could beautify in Fanstar fashion. This Jetstar, the "demonstrator," it obtained in July of 1985 from GECC. AAI rented the demonstrator from GECC for a term of five years.

Concurrent with the execution of this lease, AAI and GECC entered into a "Retrofit Agreement." The Retrofit Agreement designated GECC as the "Customer" and AAI as the "Contractor" and called for AAI to modernize GECC's plane. Included within the scope of that modernization was an "interior refurbishment." As AAI was an idea shop only, it did not have the resources to modernize aircraft or refurbish interiors. To do this, it had to hire a production facility. One such facility was operated by Midcoast. In July or August 1985 AAI hired Midcoast to refurbish the interior of GECC's Jetstar ("the 1985 deal"). Pursuant to this deal, Midcoast refurbished the Jetstar's interior in accord with the Retrofit Agreement between GECC and AAI. Midcoast was paid by AAI and, in one instance, by GECC. AAI then took the plane to the 1985 National Business Aircraft Association ("NBAA") convention where it could be viewed by aircraft consumers.

It dawned on Midcoast that if successful the Fanstar project could be a business bonanza. Midcoast knew that the project had the potential to modernize hundreds of Jetstars, not just GECC's, and it knew that if the potential was realized, the project would use lots of production facility services. Midcoast wanted to provide those services. Thus, it started negotiating with AAI to be the exclusive "production facility" for the Fanstar project. The negotiations continued into 1986, yet no agreement was reached. AAI was coy; it would not allow Midcoast on board unless Midcoast shouldered some of the project's growing financial burdens. This Midcoast was loath to do. It was aware, as was the whole aviation industry, that AAI was on shaky financial ground, completely bereft of its own funds, in debt to a squadron of creditors, and entirely dependent on GECC for the money that kept the Fanstar project flying.

In the summer of 1986 AAI and GECC decided that the interior of GECC's plane had to be better. The 1986 NBAA convention was fast approaching and both wanted it better by then. AAI asked Midcoast to do the work. Midcoast saw an opportunity to make points with AAI. A deal was crafted whereby Midcoast would do the interior ("the 1986 deal"). This deal (and the work it called for) was separate and distinct from the one AAI and Midcoast struck in 1985. Under the understanding of this one, if Midcoast and AAI reached a long-term production facility agreement Midcoast would roll over the cost of the work and recoup it through work done in the future. If no such agreement was reached, however, Midcoast immediately would demand payment.

Before working on the 1986 deal Midcoast wanted assurances that it would get paid. In late July, 1986, it went to GECC looking for those assurances. A meeting was held at GECC's headquarters. Midcoast made it clear to GECC that it knew AAI's role in the project was only that of marketing. It also made it clear that it knew where the money for the project came from—GECC. Midcoast indicated that before it did any work, including the

proposed interior work, it needed assurances from GECC that GECC would finance the Fanstar project to certification. The assurances were given.

Midcoast then went to work. Pursuant to the 1985 deal Midcoast had "refurbished" the demonstrator's interior. Now it completely modernized it, enlarging it and providing it with sleeping accommodations. The timetable for completing the 1986 deal was tight: it had to be finished before the 1986 NBAA convention. In September 1986 Midcoast was reminded of this. At a "first-flight" gathering for the Fanstar prototype both AAI and GECC emphasized to Midcoast the need for completing the interior by conventiontime, and both exhorted Midcoast to find a way to get the job done. Midcoast did so, putting about $94,000 worth of labor and material into GECC's plane, and putting it there on time.

Attempts by Midcoast and AAI to reach a long-term agreement continued throughout Midcoast's 1986 work and after it. They were not fruitful. The negotiations eventually stalled, and at the end of 1986, they crashed. AAI awarded the long-term contract to another production facility. Midcoast was out. Since it no longer had the prospect of a long-term contract into which it could roll over the costs of its 1986 work, Midcoast billed AAI. AAI, in turn, submitted the bill to GECC.

Back in June of 1986 AAI and GECC had entered into a "new loan" agreement whereby GECC loaned AAI $2.5 million so AAI could pay its bills. AAI, however, could not pay as it pleased. One condition of the new loan was that GECC would control the disbursement of the loan funds. It would "pay" only those bills of AAI that were essential to the Fanstar project. Thus GECC had complete discretion over which of AAI's bills were paid and which were not. Midcoast's was not. Since Midcoast and AAI had failed to reach a long-term production facility agreement, GECC considered Midcoast old hat. Accordingly, all payments to Midcoast were grounded.

Midcoast then sued AAI and GECC: AAI on a claim based on contract; GECC on a claim based on quasi-contract. Midcoast's claim against AAI was an empty success. Midcoast won a default judgment, but the judgment appears worthless. It fared better against GECC. It won a judgment after jury trial for $93,988.55, one that holds its worth.

GECC now seeks the reversal of that judgment. Its success in obtaining that reversal depends on the Illinois law of quasi-contract and *quantum meruit.*

## II.

■ Under Illinois law, one may become obligated to another by quasi-contract. Derived from civil law, quasi-contract is " 'an obligation similar in character to that of a contract, but which arises not from an agreement of parties but from some relation between them.' " *Board of Highway Comm'rs v. City of Bloomington,* 253 Ill. 164, 97 N.E. 280, 284 (1911) (quoting texts on Roman and civil law). "[T]he obligation arises not from consent ... but from the law or natural equity"; id.; it "exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention." *Id. See also Century 21 Castles by King, Ltd. v. First Nat'l Bank of Western Springs,* 170 Ill.App.3d 544, 121 Ill.Dec. 174, 177, 524 N.E.2d 1222, 1225 (1988); *Arthur Rubloff & Co. v. Drovers Nat'l Bank of Chicago,* 80 Ill.App.3d 867, 36 Ill.Dec. 194, 200, 400 N.E.2d 614, 620 (1980). Because it exists by implication of law, and because the obligation imposed by it superficially resembles the obligation imposed by contract, the concept of quasi-contract has often been denoted as "contract implied in law." *See, e.g., Board of Highway Comm'rs,* 253 Ill. 164, 97 N.E. at 284. Nevertheless, the concept has nothing to do with "contract" as such. *Mueller v. City of Highland Park,* 166 Ill.App.3d 114, 116 Ill.Dec. 644, 647, 519 N.E.2d 712, 715 *appeal denied,* 122 Ill.2d 578, 125 Ill.Dec. 221, 530 N.E.2d 249 (1988). *See also* H.S. Maine, Ancient Law 286 (Dorsett ed. 1986) (1st ed. 1861).

A claim in quasi-contract is established when "the defendant has unjustly retained a benefit to the plaintiff's detriment, and ... defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp.,* 131 Ill.2d 145, 137 Ill.Dec. 19, 26, 545 N.E.2d 672, 678 (1989). *Accord Overseas Dev. DISC Corp. v. Sangamo Const. Co.,* 840 F.2d 1319, 1325 (7th Cir.1988); *Lirtzman v. Fuqua Indus., Inc.,* 677 F.2d 548, 553 (7th Cir.1982); *Bloomgarden v. Coyer,* 479 F.2d 201, 211 (D.C.Cir.1973). *See also* Restatement of Restitution § 1 (1937) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other."). Obviously, equitable principles play a major role in quasi-contract (although the action is one at law). *See Board of Highway Comm'rs,* 253 Ill. 164, 97 N.E. at 285; *Partipilo v. Hallman,* 156 Ill.App.3d 806, 109 Ill.Dec. 387, 390, 510 N.E.2d 8, 11 (1987); *Arthur Rubloff & Co.,* 80 Ill. App.3d 867, 36 Ill.Dec. at 200, 400 N.E.2d at 620. The key principle is that of unjust enrichment. *City of Marshall v. City of Casey,* 177 Ill.App.3d 1065, 127 Ill.Dec. 292, 294, 532 N.E.2d 1121, 1123 (1989); *Arthur Rubloff & Co.,* 80 Ill.App.3d. 867, 36 Ill. Dec. at 200, 400 N.E.2d at 620. *See also HPI Health Care Serv.,* 131 Ill.2d 145, 137 Ill.Dec. at 25, 545 N.E.2d at 678; *Partipilo,* 156 Ill.App.3d 806, 109 Ill.Dec. at 390, 510 N.E.2d at 11. Quasi-contractual duties arise only in situations of unjust enrichment, situations where "one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which *ex cequo et bono* belongs to another." *Board of Highway Comm'rs,* 253 Ill. 164, 97 N.E. at 285. *See also Rutledge v. Housing Authority of East St. Louis,* 88 Ill.App.3d 1064, 44 Ill.Dec. 176, 179, 411 N.E.2d 82, 85 (1980). If that situation exists, quasi-contract mandates the imposition of an obligation upon the benefit receiver to avoid the unjust enrichment. *See Lirtzman,* 677 F.2d at 553. The obligation imposed is an obligation to pay money to the benefit provider, an obligation "closely akin to a duty to make restitution." *Bloomgarden,* 479 F.2d at 210. *See also Lirtzman,* 677 F.2d at 553.

A niche of quasi-contract law is the law of *quantum meruit.* The concern of *quantum meruit* is situations in which services are rendered, but no payment forthcoming. As would be expected, the doctrine for these situations is in accord with that of quasi-contract generally: The essence of *quantum meruit* liability is " 'the receipt of a benefit by one party which would be inequitable for that party to retain.' " *Telander v. Posejpal,* 94 Ill.App.3d 616, 49 Ill.Dec. 590, 594, 418 N.E.2d 444, 448 (1981) (quoting *First Nat'l Bank of Lincolnwood v. Glenn,* 132 Ill.App.2d 322, 324, 270 N.E.2d 493, 495 (1971)). *See also Partipilo,* 156 Ill.App.3d 806, 109 Ill.Dec. at 389, 390, 510 N.E.2d at 10, 11. The elements of *quantum meruit* liability distilled from this essence are the performance of services by the plaintiff, the receipt of the benefit of those services by the defendant, and the unjustness of the defendant's retention of that benefit without compensating the plaintiff. *See City of Marshall,* 177 Ill.App.3d 1065, 127 Ill.Dec. at 294, 532 N.E.2d at 1123; *Romanek–Golub & Co. v. Anvan Hotel Corp.,* 168 Ill. App.3d 1031, 119 Ill.Dec. 482, 489, 522 N.E.2d 1341, 1348 (1988); *Edens View Realty & Inv., Inc. v. Heritage Enter., Inc.,* 87 Ill.App.3d 480, 42 Ill.Dec. 360, 366, 408 N.E.2d 1069, 1075 (1980). *See also O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.,* 51 Ill.App.3d 11, 8 Ill.Dec. 78, 81, 365 N.E.2d 316, 319 (1977) (elements of recovery, not elements of liability); *Nardi & Co. v. Allabastro,* 20 Ill.App.3d 323, 314 N.E.2d 367, 370 (1974). *See also* Kovacic, *A Proposal to Simplify* Quantum Meruit *Litigation,* 35 Am.U.L.Rev. 547, 554 (1986).

As is evident from the citations, *quantum meruit* doctrine is well established in Illinois. Yet, like quasi-contract doctrine in general, *quantum meruit* doctrine is somewhat hard to grasp. It is easier to talk about "fundamental principles of justice, equity, and good conscience" than to reduce those principles to a definite calculus. Fortunately for us, we need not make

such a reduction. GECC's complaint lies with the district court's denial of its motions for directed verdict and j.n.o.v. Thus, we need only determine whether the evidence and its reasonable implications can support the jury's finding that the "fundamental principles" mentioned above were violated by GECC's retention of a Midcoast-furnished benefit. *See David Copperfield's Disappearing, Inc. v. Haddon Advertising Agency, Inc.*, 897 F.2d 288, 291 (7th Cir.1990) (standard of review for denial of a motion for directed verdict or j.n.o.v.). *See also Adams v. Fred Weber, Inc.*, 849 F.2d 1018, 1020 (7th Cir.1988) (quoting Illinois directed verdict and j.n.o.v. requirement).

■ GECC argues that the facts and circumstances cannot possibly support a case against it based on the principles of *quantum meruit*. But a review of the facts and circumstances, and a comparison of them with the law stated above, leads us to the opposite conclusion. It is clear to us that Midcoast performed services in 1986 when it improved the interior of GECC's plane, that this work made the plane better than it otherwise would have been, and that this improvement of the plane conferred an enriching benefit on the plane's owner, GECC.[2] The only real question is whether it is unjust for GECC not to compensate Midcoast for the enrichment. We cannot say as a matter of law that it is, nor can we say the opposite. But we can say that a reasonable jury pondering the law of quasi-contract could find the facts indicative of what the words "unjust" and "inequitable" stand for. And that is all we need say to uphold the district court.[3]

2. GECC argues that it did not benefit from the work performed by Midcoast. It centers its argument around the lease of GECC's plane to AAI and GECC's loss of possession pursuant to that lease. "If GECC is not in possession of the plane," it asks, "how could it possibly be benefited?"

GECC could be benefited because it had an interest in the plane, though not a possessory one. Midcoast's work improved GECC's plane, raising its value. The increase in the plane's value was a benefit to AAI, as the plane's present possessor. But it was also a benefit to GECC, as the owner and holder of the reversionary interest in the plane. This is so regardless of AAI's present possession. At the time it was done, the value of Midcoast's work made GECC's reversionary interest in the plane worth more because GECC could count on getting a plane after the lease expired that would be more valuable than it otherwise would have been. The expectation of enjoying this value, even if five years hence, increased the *present* value of GECC's interest in the plane. Clearly, the wait for the enjoyment of the plane made the benefit to GECC less than total. But it did not eliminate the benefit altogether. Thus, a present benefit was conferred on GECC when Midcoast did the work, even though GECC did not have the possession of the plane, and even though GECC may not now have possession of the plane. It is that benefit, at that time, that quasi-contract is concerned with. *See Rutledge v. Housing Authority, supra*, 88 Ill.App.3d 1064, 44 Ill.Dec. at 179, 411 N.E.2d at 85.

The improvement in the plane aside, GECC benefited in other ways from Midcoast's work. That work created a better "demo" for the Fanstar project, one usable for the 1986 NBAA convention. As financier, GECC's prospects for making money on the Fanstar project were increased by the work (that those prospects later may have come to naught is irrelevant). At the time of Midcoast's work, GECC stood a better chance of making money on AAI's long-term Fanstar project than it otherwise would have. Better chances translate into higher present value, and the higher present value was a benefit to GECC, one independent of the plane's ownership.

3. GECC argues that the law requires proof of "wrongdoing" on its part, citing *HPI Health Care Serv., supra*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672. It feels that in order to affirm the district court's judgment, we must find proof of such wrongdoing. We think otherwise. *HPI* held that in certain circumstances a defendant's retention of a benefit is unjust (1) where the benefit should have been given to the plaintiff, but by mistake was not, (2) where the defendant procured the benefit from a third party through wrongful conduct, or (3) where the plaintiff has a better claim to the benefit than the defendant. 137 Ill.Dec. at 26, 545 N.E.2d at 678. Although a quasi-contract case, *HPI* is nothing like the present *quantum meruit* action. It concerns the transfer of money by a third party to the defendant, not the rendition of services by a plaintiff that benefits a third party and the defendant. So we do not read *HPI* as superimposing a "wrongfulness" requirement on actions to recover *quantum meruit*.

Moreover, *HPI*'s holding does not restrict quasi-contract to cases of "wrongdoing." *HPI* states three conditions, each of which may show unjust enrichment, not just one based on wrongful conduct. Thus it seems not to disavow the normal rule that "[a] cause of action based on unjust enrichment ... does not require fault on the part of the defendant." *Partipilo, supra*, 156

■ GECC argues, however, that quasi-contract's broad, equitable language does not mean what it seems to. GECC argues that despite that language, Illinois courts actually have limited the use of quasi-contract to a narrow range of cases, a range of cases that does not include this one. It backs its argument with a multitude of assertions. First, it asserts that this is a case where a party providing services pursuant to a contract is disappointed by its cocontractor's failure to pay, and thus turns to a benefiting third party for recompense. It points out that Illinois courts will not impose a quasi-contractual obligation in such a case upon the benefiting third party. In general, this is true. *See Compton v. Payne*, 69 Ill. 354 (1873); *Walker v. Brown*, 28 Ill. 378 (1862); *Premier Elec. Constr. Co. v. LaSalle Nat'l Bank*, 132 Ill.App.3d 485, 87 Ill.Dec. 721, 729–30, 477 N.E.2d 1249, 1257–58 (1984); *Decatur Prod. Credit Ass'n v. Murphy*, 119 Ill. App.3d 277, 74 Ill.Dec. 765, 772, 456 N.E.2d 267, 274 (1983); *Daley v. G'Sell*, 102 Ill. App.3d 548, 58 Ill.Dec. 524, 527, 430 N.E.2d 556, 559 (1981); *Telander*, 94 Ill.App.3d 616, 49 Ill.Dec. at 599, 418 N.E.2d at 453; *Vanderlaan v. Berry Constr. Co.*, 119 Ill. App.2d 142, 255 N.E.2d 615, 617 (1970); *Stewart v. McIntosh*, 316 Ill.App. 212, 44

N.E.2d 451 (1942). In general, however, "if you do work pursuant to a contract with X, you don't expect that Y, a nonparty, will pay you if X defaults, merely because Y was benefited by your work." *Goldstick v. ICM Realty*, 788 F.2d 456, 467 (7th Cir. 1986). And without your expectation of payment, the enrichment of the Y can hardly be called unjust. *See id.* But this is not the general case. This is not the scenario in which one attempts to impose on a third party liability "for work done under an explicit contract between two different parties[,] *merely* because the third party benefited from the work." *Decatur Prod. Credit Ass'n*, 119 Ill.App.3d 277, 74 Ill.Dec. at 772, 456 N.E.2d at 274 (emphasis added). *See also* Restatement of Restitution § 110 (using the word "merely"). Rather, this is a scenario where the imposition of quasi-contractual liability is sought because GECC not only benefited from Midcoast's work, but enticed Midcoast to undertake the work in the first place and then refused to see Midcoast paid. Midcoast had expectations of payment in this case, payment (in reality) from GECC. The circumstances made those expectations reasonable. Thus, this case is without the ambit of the general rule.[4] *Cf. Redd v. Woodford County*

---

Ill.App.3d 806, 109 Ill.Dec. at 390, 510 N.E.2d at 11. *See also Board of Highway Comm'rs, supra*, 253 Ill. 164, 97 N.E. 280 (imposing quasi-contract liability despite an absence of "wrongful intention on the part of anyone in connection with this transaction."). *But see Herbert W. Jaeger & Assoc. v. Slovak Am. Charitable Ass'n*, 156 Ill.App.3d 106, 107 Ill.Dec. 710, 714, 507 N.E.2d 863 (1987) (an enriched party who is innocent of any wrongdoing is not required to reimburse the other's losses and expenses). Also, *HPI* states only that under the conditions mentioned a defendant's retention of a benefit is unjust. It does not state that only under the conditions mentioned is a defendant's retention of a benefit unjust. Its holding is hardly restrictive.

Assuming, *arguendo*, that "wrongdoing" is necessary, we still would conclude that Midcoast has a case. The requirement of "wrongfulness" does not mean that a defendant must perform illegal acts or manifest signs of moral depravity. It means merely that a defendant does something unjust, thus making its enrichment unjust. Here, the facts and circumstances clearly could be construed as showing "unjust" conduct on GECC's part. Consequently, the re-

quirement would not clip the wings of Midcoast's claim.

**4.** In its brief, GECC presents another "contract bar" argument: that Midcoast elected to pursue—and win—a contract remedy against AAI, therefore it is barred from pursuing a quasi-contract remedy against GECC. It is not clear whether the Illinois doctrine of election of remedies would allow Midcoast to recover from GECC. That doctrine bars a plaintiff from pursuing inconsistent remedies. *People ex rel. Ames v. Marx*, 370 Ill. 264, 18 N.E.2d 915 (1938). It is used in cases where "(1) double compensation is threatened, (2) defendant has actually been misled by plaintiff's conduct, or (3) res judicata can be applied." *Kenny Constr. Co. v. Hinsdale Sanitary Dist.*, 111 Ill.App.3d 690, 67 Ill.Dec. 274, 279, 444 N.E.2d 510, 515 (1982). We have no problem with the inconsistency of the remedies Midcoast pursued. Nothing prevents a plaintiff from recovering a judgment against a party on a contractual obligation, and then recovering one against another party on a quasi-contractual obligation, although we grant that if one party tried to recover from another on both a contract and quasi-contract basis, only one remedy would be allowed. *See, e.g.,*

*Swine Breeders,* 54 Ill.App.3d 562, 12 Ill. Dec. 529, 370 N.E.2d 152 (1977) (court refusing to uphold obligation on quasi-contract grounds, but doing so upon discovery of a hidden contract).

■ Second, GECC asserts that Midcoast cannot recover because it did the 1986 work for free, as a gesture of goodwill to win a long-term contract with AAI. Parties who perform services altruistically or gratuitously, with some end other than payment in mind, cannot recover *quantum meruit;* with no expectation of payment for services rendered, a party can hardly claim that another has been *unjustly* enriched. *See Moreen v. Estate of Carlson,* 365 Ill. 482, 6 N.E.2d 871 (1937) (services rendered for love and affection); *Plastics & Equip. Sales Co. v. DeSoto, Inc.,* 91 Ill.App.3d 1011, 47 Ill.Dec. 487, 415 N.E.2d 492 (1980) (services rendered not for a fee, but to secure a business advantage with another party); *Rutledge,* 88 Ill.App.3d 1064, 44 Ill.Dec. 176, 411 N.E.2d at 82 (services rendered incident to negotiation). *See also Lirtzman,* 677 F.2d at 553 (quoting *Bloomgarden,* 479 F.2d at 211–12). But the facts belie GECC's contention that Midcoast was working for free, that it did not expect payment. Midcoast may have been willing to amortize the costs of its 1986 work over the life of a long-term contract, had it entered into one, but this does not mean that it rendered services gratuitously or as an incident to long-term contract negotiations. The facts show that Midcoast expected payment: through extra

work if a long-term contract was secured, otherwise, through immediate billing. Midcoast had no intention of working for free. That is why it sought out GECC's assurances in the first place.

■ Third, GECC asserts that Midcoast may not recover *quantum meruit* because Midcoast failed to pursue its remedy under the Illinois Mechanics' Liens Act. Such a failure, according to GECC, constitutes a waiver by Midcoast of its ability to hold GECC to its obligation. Illinois courts have held that a subcontractor who fails to perfect a mechanics' lien cannot pursue remedies such as an equitable lien. *See Hill Behan Lumber Co. v. Marchese,* 1 Ill.App.3d 789, 275 N.E.2d 451, 453 (1971). *See also Suddarth v. Rosen,* 81 Ill.App.2d 136, 224 N.E.2d 602, 603 (1967). But they also have indicated that a subcontractor's failure to perfect a mechanics' lien will not prevent the subcontractor from pursuing a remedy based on a separate contract with the owner. *See, e.g., Bates & Rogers Constr. Corp. v. North Shore Sanitary Dist.,* 92 Ill.App.3d 90, 47 Ill.Dec. 158, 162, 414 N.E.2d 1274, 1278 (1980). And they have held that such a failure will not prevent a subcontractor from pursuing a remedy based on a separate, equitable relationship with the owner. *See Swansea Concrete Prod., Inc. v. Distler,* 126 Ill.App.3d 927, 81 Ill.Dec. 688, 692, 467 N.E.2d 388, 392 (1984). These cases show that a subcontractor who has been left high and dry by a contractor, yet who has not perfected a mechanics' lien, cannot recover against

*City of Marshall, supra,* 177 Ill.App.3d 1065, 127 Ill.Dec. at 295, 532 N.E.2d at 1124; *First Commodity Traders, Inc. v. Heinhold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir.1985). Nor do we have a problem with misleading the defendant, or res judicata. But we do have one with the threat of double recovery. If Midcoast collected from AAI on its contract judgment and then pursued a quasi-contract claim arising from the same facts and circumstances against GECC, the quasi contract claim should be barred because double compensation would be threatened. *See Paoli v. Zipout, Inc.,* 21 Ill. App.2d 53, 157 N.E.2d 79, 83 (1959). Whether Midcoast did collect on its judgment against AAI, or whether it possibly could, we do not know. There are not enough facts on this matter in the record, although there are indications that AAI is judgment proof, and even defunct.

But we need not fret about this issue. The first time GECC raised its election of remedies argument was in its motion for j.n.o.v. Election of remedies, however, is an affirmative defense. *See, e.g., Kuhl v. Hayes,* 212 F.2d 37, 39 (10th Cir.1954); *Bagwell v. Susman,* 165 F.2d 412, 415 (6th Cir.1947). GECC should have raised the defense in its answer to Midcoast's complaint (the default judgment against AAI was entered on May 11, 1988; GECC filed its answer to Midcoast's quasi-contract count on June 30, 1988). Fed.R.Civ.P. 8(c). It did not. There are no unusual circumstances to explain this lapse. Thus we consider GECC's election-of-remedies argument waived. *See Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.,* 649 F.2d 530, 534 (7th Cir.1981); *Stanish v. Polish Roman Catholic Union of America,* 484 F.2d 713, 721 (7th Cir.1973).

an owner *unless* a relationship between the subcontractor and the owner exists upon which a separate liability may be based. Such a relationship may be one founded on contract or, as in this case, on quasi-contract. A subcontractor's failure to pursue its mechanics' lien remedies does not destroy these relationships, nor does it constitute a waiver of any common law liability derived therefrom. *See Hoier v. Kaplan,* 313 Ill. 448, 145 N.E. 243, 246 (1924) ("remedy by mechanic's lien is in addition to the ordinary remedies afforded by the common law"). So we cannot say that Midcoast's failure to file a mechanics' lien bars Midcoast's claim on quasi-contract.[5] At most, such a failure cuts against finding that GECC's enrichment was unjust, but not so much to prevent the jury from taking the decision.

Thus, we conclude that Midcoast presented a case sufficient under the principles of *quantum meruit.* The trial court properly allowed the case to go to the jury, and it properly denied GECC's motions for directed verdict and j.n.o.v.

### III.

This leaves us with the trial court's handling of the evidence and the jury instructions. We have reviewed GECC's evidentiary objections and find them of no consequence.[6] The trial court allowed in evidence of AAI's relationship with GECC, evidence detailing the term of GECC's loans to AAI and the time when GECC stopped making those loans. GECC complains that the evidence is irrelevant and prejudicial. Prejudicial we agree, for the evidence showed GECC's control over AAI's payments, including the one due Midcoast. But not unfairly prejudicial. *See* Fed.R.Evid. 403. Nor is it irrelevant. *See* Fed.R.Evid. 401. Knowledge of GECC's relationship with AAI was important in determining the character of GECC's relationship with Midcoast. And the character of GECC's relationship with Midcoast was the key to determining the unjustness of GECC's enrichment. The trial court also excluded evidence that AAI had burdened GECC's plane with liens and surrendered it to a warehouseman. GECC argues that the evidence was relevant in showing that GECC did not receive a benefit from Midcoast's work. But as we explained earlier, *see* note 2, *ante*, the critical time for determining if and in what amount a benefit was conferred is the time when Midcoast did the work. If the value of GECC's interest in the demonstrator was at that time increased, GECC benefited regardless of later events. Thus, the trial court properly excluded the evidence on the subsequent fate of GECC's plane.

GECC's objections about the jury instructions have more merit.[7] Below, the court instructed the jury as follows:

5. We are assuming that Midcoast was a subcontractor to whom mechanics' lien law applies. This is just an assumption for the sake of argument. Midcoast was clearly a subcontractor in 1985, when it worked on the demonstrator's interior pursuant to the Retrofit Agreement. But Midcoast's 1986 work was not governed by the Retrofit Agreement. GECC's counsel conceded this point in oral argument. Midcoast's relationship with GECC in 1986, then, may not have been that of subcontractor to owner. Instead, it may have been that of contractor to lessor/owner, or production facility to financier, or even partner to partner. And outside of the subcontractor-owner relationship, the failure to pursue a mechanics' lien remedy apparently will not bar a suit based on an unjust enrichment theory. *See Calacurcio v. Levson,* 68 Ill.App.2d 260, 215 N.E.2d 839, 841 (1966). *See also Hill Behan Lumber Co., supra,* 1 Ill. App.3d 789, 275 N.E.2d at 453.

6. A trial judge, when ruling on questions of evidence, has great discretion. To this discretion we accord "great deference." *Charles v. Daley,* 749 F.2d 452, 463 (7th Cir.1984), *appeal dismissed, Diamond v. Charles,* 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986). Accordingly, "[a] ruling on evidentiary matters will be reversed only on a clear showing of abuse of discretion." *United States v. Bouye,* 688 F.2d 471, 476 (7th Cir.1982).

7. We review jury instructions to see "whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *Tikalsky v. City of Chicago,* 687 F.2d 175, 180 (7th Cir.1982) (quoting *Alloy Int'l Co. v. Hoover–NSK Bearing Co.,* 635 F.2d 1222, 1226–27 (7th Cir.1980). Our review is limited. *Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1117 (7th Cir.1983). With instructions, we don't pick nits; we exam-

The plaintiff has a burden of proving each of the following propositions:

First, plaintiff provided services and materials that were of benefit to defendant and accepted by defendant; and

Second, it would be inequitable for General Electric Credit Corp. to retain the benefit of plaintiff's services without payment for them; and,

Third, the reasonable value of the services and materials provided by the plaintiff.

If you find from your consideration of all the evidence that each of these propositions have been proved, then your verdict should be for the plaintiff, but, if, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendant.

GECC has three problems with this instruction.

■■■ First, GECC feels that the instruction's first paragraph is deficient. GECC believes that Midcoast had to prove not that GECC accepted the benefit, but that it did so *voluntarily* and *knowingly*. There is no question that "voluntary and knowing acceptance" language can be found in many of Illinois's recent quasi-contract cases. *See, e.g., Woodfield Lanes, Inc. v. Village of Schaumburg,* 168 Ill.App.3d 763, 119 Ill.Dec. 568, 570, 523 N.E.2d 36, 38 (1988); *Domenella v. Domenella,* 159 Ill. App.3d 862, 111 Ill.Dec. 771, 773, 513 N.E.2d 17, 19, *appeal denied,* 117 Ill.2d 542, 115 Ill.Dec. 399, 517 N.E.2d 1085 (1987); *Herbert W. Jaeger & Assoc. v. Slovak Am. Charitable Ass'n,* 156 Ill.App.3d 106, 107 Ill.Dec. 710, 714, 507 N.E.2d 863, 867 (1987); *Behrstock v. Ace Hose & Rub-*

*ber Co.,* 147 Ill.App.3d 76, 99 Ill.Dec. 932, 935, 496 N.E.2d 1024, 1027 (1986); *Premier Elec. Constr. Co. v. LaSalle Nat'l Bank,* 132 Ill.App.3d 485, 87 Ill.Dec. 721, 729, 477 N.E.2d 1249, 1257 (1985); *In re Milborn,* 122 Ill.App.3d 688, 78 Ill.Dec. 241, 244, 461 N.E.2d 1075, 1078 (1984); *Plastics & Equip. Sales Co. v. DeSoto, Inc.,* 91 Ill. App.3d 1011, 47 Ill.Dec. 487, 493, 415 N.E.2d 492, 498 (1980). This language comes from *Elliot v. Villa Park Trust & Savings Bank,* 63 Ill.App.3d 714, 20 Ill. Dec. 529, 532, 380 N.E.2d 507, 510 (1978), *Anderson v. Gewecke,* 36 Ill.App.3d 170, 343 N.E.2d 673, 677 (1976), and a slew of estate cases, *e.g., In re Estate of Pomeroy,* 21 Ill.App.3d 648, 316 N.E.2d 231, 236 (1974); *In re Estate of Dal Paos,* 118 Ill. App.2d 235, 254 N.E.2d 300, 303 (1969); *In re Estate of Foster,* 46 Ill.App.2d 319, 197 N.E.2d 257, 260 (1964). *Elliot, Anderson,* and the estate cases, however, do not hold that a defendant *must* voluntarily and knowingly accept benefits before a plaintiff can recover in quasi-contract, they hold merely that *when* a defendant does so, "the law implies a promise to pay [to the plaintiff] reasonable compensation." *Elliot,* 63 Ill.App.3d 714, 20 Ill.Dec. at 532, 380 N.E.2d at 510. Such a positive pronouncement of law cannot be read to doom quasi-contract actions when a defendant's voluntary and knowing acceptance of benefits is lacking.[8] This is obvious in light of the long line of Illinois quasi-contract cases previously cited, *see* Part II, *ante,* that make no mention of a requirement of voluntary and knowing acceptance.

Moreover, the use of "voluntary and knowing acceptance" language in cases such as this one is plainly wrong. Both *Elliot* and *Anderson* cite *Board of Highway Comm'rs v. City of Bloomington,* 253

ine the whole of what was given and look for overall fairness and accuracy. *See United States v. Doerr,* 886 F.2d 944, 960 (7th Cir.1989).

8. We do not mean to imply an absence of voluntary and knowing acceptance in this case. The record is replete with proof that GECC knew of the 1986 work that AAI proposed for Midcoast, that GECC talked with Midcoast about this work before it was started, that GECC gave assurances to Midcoast that GECC's money would finance the work, that GECC later encouraged

Midcoast in the midst of that work, and that GECC used and enjoyed the benefit of that work that boosted not only the value of its plane, but also the value of its investment in the Fanstar project. This proof comes from the testimony of Midcoast executives, it is true, and it was denied vehemently by GECC executives. But it does not come completely from Midcoast executives. It also comes from the testimony of AAI, which backs up Midcoast's assertions, not GECC's, and from inferences raised by common sense.

Ill. 164, 97 N.E. 280 (1911), the preeminent Illinois case on the theory of quasi-contract, for the proposition that a voluntary and knowing acceptance creates an implied contract. And sure enough, *Board of Highway Comm'rs* states the proposition: "A familiar illustration of an implied contract is, where one person, in the absence of any express agreement, renders valuable services to another *which are knowingly accepted* by such other, the law will imply a promise to pay a fair and reasonable compensation for such services." 253 Ill. 164, 97 N.E. at 284 (emphasis added). But this proposition relates to "contracts implied in fact," not quasi-contract "contracts implied in law." *See id.* A contract implied in fact is a contract, pure and simple. *Id.* It is an agreement reached through the parties' acts and conduct. *Id.* Being a true contract, the contract implied in fact must contain all the necessary elements of contracts in general. *Id.* See also *Lirtzman v. Fuqua Indus., Inc.*, 677 F.2d 548, 551 (7th Cir.1982). Those elements are consideration, offer, *and acceptance, Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 13 Ill.Dec. 699, 704, 371 N.E.2d 634, 639 (1977), an acceptance that must be voluntary and knowing.

■■■■ A quasi-contract, or contract implied in law, however, may arise despite the absence of a voluntary and knowing acceptance. *See generally* Kovacic, *A Proposal to Simplify* Quantum Meruit *Litigation*, 35 Am.U.L.Rev. 547 (1986). This is so because

> [i]n ... [quasi-contract] cases the notion of contract is purely fictitious. *There are none of the elements of a contract that are necessarily present.* The intention of the parties in such a case is entirely disregarded, while in the case of express and implied contracts in fact the intention is of the essence of the transaction.... As has been well said, in the case of contracts the agreement defines the duty, while in the [quasi-contract] class of cases "the duty defines the contract."

*Board of Highway Comm'rs*, 253 Ill. 164, 97 N.E. at 284 (emphasis added). *See also Arthur Rubloff & Co. v. Drovers Nat'l Bank of Chicago*, 80 Ill.App.3d 867, 36 Ill.Dec. 194, 200, 400 N.E.2d 614, 620 (1980). The duty imposed by quasi-contract simply does not hinge on the defendant's "acquiescence or acceptance"; it hinges only on the defendant's unjust enrichment. *Frisch Contracting Serv. Co. v. Personnel Protection, Inc.*, 158 Ill.App.3d 218, 110 Ill.Dec. 654, 658, 511 N.E.2d 831, 835 (1987). Granted, proof of a defendant's voluntary and knowing acceptance of benefits goes a long way toward proving the unjustness of the defendant's enrichment. But the key element is the unjustness of defendant's enrichment, not the acceptance. Thus, the trial court did not err by refusing to instruct the jury on the purported need for GECC's voluntary and knowing acceptance.[9]

■■ GECC's second problem with the instruction is that the second paragraph, speaking of "inequitable" circumstances, is not specific enough. In the court below, GECC wanted an instruction making Midcoast prove more than inequity. It wanted an instruction making Midcoast prove (1) that Midcoast did not confer the benefit "officiously or gratuitously," (2) that Midcoast did not confer the benefit "in order to gain a business advantage" with AAI, (3)

9. Moreover, were we to conclude that "voluntary and knowing acceptance" was the rule, not just rhetoric, the absence of the words "voluntary and knowing" in this case would be harmless. The trial court instructed the jury that they had to find that the benefit provided by Midcoast was "accepted by the defendant." "Acceptance," in the normal use of the word, means a manifestation of assent; it implies voluntariness of will and knowledge of the circumstances. Thus, the use of "voluntary and knowing" would add nothing to the instruction. Granted, in some circumstances the meaning of the word "acceptance" may not be so grand and the addition of the words "voluntary" or "knowing" might be helpful; for example, where one "accepts" something only because of a gun pointed to the head (duress or coercion), or where one "accepts" something because of a belief that the thing accepted is something else (fraud or mistake). But in this case, the evidence suggests no such circumstances. The use of the phrase "voluntarily and knowingly" to modify "accepted," then, would be redundant. It would be mere repetition of the obvious. At the very least, the exclusion of the phrase would be harmless.

that Midcoast contemplated receiving a fee at the time the benefit was conferred, and (4) that GECC "reasonably believed that plaintiff expected a fee" from GECC. But as Illinois quasi-contract law shows again and again, inequity or unjustness (along with benefit conferred) is all Midcoast had to prove. *Cf.* Restatement of Restitution § 2, comment a (1937) (principle of officious conferror is not a limitation of unjust enrichment principle, but only a factor in considering whether one was unjustly enriched). GECC's proffered instruction would require Midcoast to disprove every possible circumstance making GECC's retention of a benefit less unjust. This it did not have to do. Thus, the trial court's instruction on the inequity of GECC's retention was not erroneous.

■■■ Finally, GECC complains about the instruction's third paragraph, dealing with the measure of damages. GECC argues that the measure of damages in quasi-contract is not the reasonable value of the services and material provided by the plaintiff, but the reasonable value of the benefit conferred on the defendant. In part, GECC is correct. If a defendant is not enriched it cannot be prosecuted successfully on a theory of quasi-contract. *Van C. Agris & Co. v. FMC Corp.*, 144 Ill. App.3d 750, 98 Ill.Dec. 601, 604, 494 N.E.2d 723, 726 (1986). Unjust enrichment lies at the heart of quasi-contract; if a defendant is not enriched, it hardly can be unjustly enriched. Similarly then, if a defendant is enriched but disgorges the value of that enrichment to the plaintiff, the purpose of a suit in quasi-contract is spent. Additional damages would serve only to unjustly impoverish the defendant for a benefit never received. Thus, damages in quasi-contract cannot be more than the amount of the benefit conferred upon the defendant. *See Herbert W. Jaeger & Assoc.*, 156 Ill.App.3d 106, 107 Ill.Dec. at 714, 507 N.E.2d at 867. *But cf.* Restatement of Restitution § 1, comment e; *id.*, Topic 2, introductory note (suggesting that in some cases involving tortious conduct or fault, damages may exceed the benefit conferred upon the defendant).

Admittedly, there are cases that state the measure of *quantum meruit* recovery as the reasonable value of the services performed by plaintiff. *See, e.g., Romanek–Golub & Co. v. Anvan Hotel Corp.*, 168 Ill.App.3d 1031, 119 Ill.Dec. 482, 489, 522 N.E.2d 1341, 1348 (1988); *Telander v. Posejpal*, 94 Ill.App.3d 616, 49 Ill.Dec. 590, 599, 418 N.E.2d 444, 453 (1981); *Edens View Realty & Inv., Inc. v. Heritage Enter., Inc.*, 87 Ill.App.3d 480, 42 Ill.Dec. 360, 366, 408 N.E.2d 1069, 1075 (1980); *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 51 Ill.App.3d 11, 8 Ill.Dec. 78, 81, 365 N.E.2d 316, 319 (1977); *Comm v. Goodman*, 6 Ill.App.3d 847, 286 N.E.2d 758, 764 (1972). *See also Frisch Contracting Serv. Co.*, 158 Ill.App.3d 218, 110 Ill. Dec. at 657, 511 N.E.2d at 834. There are three explanations for this phenomenon. First, in many cases a reasonable way to value the benefit conferred on the defendant is to value the services and materials provided by the plaintiff. This is because the cost of the services and materials provided is roughly equivalent to the value of the benefit conferred, and the cost of the services and materials provided is susceptible to proof at trial, whereas the value conferred is not. In this case, however, the cost or value of the services and materials provided by Midcoast is an unreasonable way to value the benefit conferred on GECC, for the value of the services and material provided by Midcoast is not roughly equivalent to the value of the benefit conferred on GECC. Midcoast's work benefited both GECC *and* AAI. The value of that benefit was split between the two; only a portion reached GECC, the rest went to AAI. Making GECC pay for the value of Midcoast's work would make it pay for the benefit conferred on AAI, as well as itself. This would be unfair. Second, some courts may have concluded that the reasonable value of the services and materials provided by the plaintiff is less than the value of the benefit conferred on the defendant. In such a case, a measure of damages based on the value of the services and materials provided by the plaintiff makes sense. It is less than the value of defendant's enrichment, yet it satisfies

plaintiff for the work it has done. Third, many cases once again confuse the doctrine of a contract implied in fact with that of a contract implied in law. When the theory of the case is a contract implied in fact, the measure of the plaintiff's recovery should be the reasonable value of the services and material it provided, *i.e.*, "reasonable compensation for the work done." *Board of Highway Comm'rs*, 253 Ill. 164, 97 N.E. at 284. This is because the defendant can be said to have "agreed" to pay the plaintiff for its work. But when the theory of the case is a contract implied in law, the measure of the plaintiff's recovery is, at most, the benefit retained by the defendant. *See id.*, at 284, 285. This is because the action is based not on an agreement between the defendant and the plaintiff, but on the equity of the defendant's enrichment.

The correct measure for *quantum meruit* recovery "is expressed by the amount which the court considers defendant has been unjustly enriched at the expense of plaintiff." *Comm*, 6 Ill.App.3d 847, 286 N.E.2d at 764 (quoting 25 C.J.S. Damages § 74). *See also Nardi & Co., Inc. v. Allabastro*, 20 Ill.App.3d 323, 314 N.E.2d 367, 370 (1974). In general, the amount of money awarded to the plaintiff should be an amount that makes the defendant's enrichment "just." The defendant's enrichment would be just if the plaintiff received the full value of his work. At that point, the plaintiff would have no unjustness to complain about, even if the defendant remains somewhat enriched. It would also be just if the defendant disgorged the entire amount of enrichment received. Without being enriched, the defendant cannot be unjustly enriched. The proper measure of *quantum meruit* recovery, then, is generally the lower of these two: the economic cost to plaintiff of providing a benefit or the economic enrichment of defendant in receiving it.

The trial court did not instruct the jury on this measure. The failure to do so was error. Accordingly, the judgment of the district court must be REVERSED, and the case REMANDED for a new trial on damages.

It is so ordered.

RIPPLE, Circuit Judge, concurring in part and dissenting in part.

I concur in the judgment of the court insofar as it requires a new trial on damages. I respectfully dissent from the court's failure to require a new trial on liability.

The majority maintains that, under the law of quasi-contract, the recipient need not receive the services "knowingly and voluntarily." This proposition is correct ... sometimes. For instance, when the recipient could be expected to desire the services and to be willing to pay for them *if* he knew of his need and of the provision of the services to fill his need, the law of quasi-contract traditionally has provided a remedy. However, the provider of services may not confer them "officiously or gratuitously." *Plastics & Equip. Sales Co. v. DeSoto*, 91 Ill.App.3d 1011, 47 Ill.Dec. 487, 493, 415 N.E.2d 492, 498 (Ill.App.Ct.1980). There is no duty to pay for what one does not need or want and would not pay had the bestowal of the "benefit" been known. When this defense is presented, the trier of fact has the duty to determine whether the recipient would have accepted the benefit had he been aware of the provider's action.

In this case, there is a genuine issue as to whether the services were provided "officiously and gratuitously"—to gain, to paraphrase *DeSoto*, a business advantage when the recipient did not contemplate a fee and when the provider could not have reasonably expected that the recipient would render compensation. Under these circumstances, I believe that, given the request of the defendant, the jury's attention should have been focused on this issue by giving the tendered instruction that the benefits must not have been bestowed officiously and gratuitously and must have been accepted knowingly and voluntarily. In a civil case, a party has a right to have the jury properly instructed on its theory of the case as long as there is evidence to support the theory and proper instructions are proposed. *See Cameo Convalescent Center, Inc. v. Senn*, 738 F.2d 836, 841 (7th Cir.1984), *cert. denied*, 469 U.S. 1106, 105

S.Ct. 780, 83 L.Ed.2d 775 (1985); *Alloy Int'l Co. v. Hoover–NSK Bearing Co.*, 635 F.2d 1222, 1226 (7th Cir.1980); *Fey v. Walston & Co.*, 493 F.2d 1036, 1048 (7th Cir. 1974). Under the circumstances in this case, the jury was not adequately instructed and the instructional omission substantially misled the jury with respect to the defendant's theory of the case. I respectfully dissent.